229 So.2d 708

J. Errol LANEY et al.

v.

Guy P. STUBBS, Jr. and Grain Dealers Mutual Insurance Company.

No. 49697.

Dec. 15, 1969.

John V. Parker, of Sanders, Miller, Downing & Kean, Frank S. Craig, Jr., of Kizer, Heaton, Craig & Cangelosi, Baton Rouge, for appellants.

David W. Robinson, of Watson, Blanche, Wilson, Posner & Thibaut, Baton Rouge, for appellees.

SANDERS, Justice.

Mr. and Mrs. J. Errol Laney brought this action in damages for the wrongful death of their son, Tommy, after he was shot while bird hunting with three youthful companions.[1] Audubon Insurance Company joined as plaintiff seeking recovery of the sum of $9000.00 paid to the Laneys in settlement of their claim against Walker P. Macmurdo, father of Jimmy Macmurdo, the companion who fired the fatal shot. Defendants are Guy P. Stubbs, Jr., father of Romney Stubbs, another hunting companion, and his insurer, Grain Dealers Mutual Insurance Company.

On Sunday, November 4, 1962, about 1:15 p.m., Tommy Laney, age 14, Jimmy Macmurdo, age 13, Terry Pentecost, age 14, and Romney Stubbs, age 14, met at the Stubbs residence to go bird hunting at a farm commonly known as the LSU Quail Farm, located on Perkins Road in East Baton Rouge Parish. Tommy Laney was armed with a 20-gauge shotgun, Terry Pentecost with a 410-gauge shotgun, and Romney Stubbs with a 12-gauge shotgun. Jimmy Macmurdo had a .22 caliber rifle, which he had borrowed from Romney Stubbs.

1. Mr. Laney died after the filing of suit, and Mrs. Laney was substituted as party plaintiff, individually and as tutrix of her minor children.

When Romney's father, Guy P. Stubbs, Jr., returned home in his car, the boys asked him to drive them to the Quail Farm. He consented, and they placed their guns on the floor in the back seat. He drove them to the farm. As they left the car, he cautioned them to "be careful" and returned home. After the hunt started, however, Romney walked home to get more shotgun shells, and his father drove him back to the Quail Farm.

Using the .22 rifle, Jimmy Macmurdo first hunted squirrels in a wooded area. His three companions hunted birds in an open bean field, stationing themselves at a safe distance from each other. Later, Jimmy Macmurdo returned to the bean field and agreed to act as a "beater" to flush birds from the underbrush in the field. He began to move about the field, shouting, beating the brush, and firing his .22 rifle. After a period of flushing, Jimmy started to leave the field to get some water. As he was leaving, however, he saw some birds, doubled back, and fired at them in the bean field. A few minutes later, he found Tommy Laney unconscious from a head wound. Tommy later died at the hospital. His death was attributed to a .22 caliber bullet from the rifle fired by Jimmy Macmurdo.

2.  Art. 2315: "Every act whatever of man that causes damage to another obliges him

Finding contributory negligence on the part of the deceased youth, the district court pretermitted a consideration of defendant's alleged primary negligence and rejected plaintiffs' demands. Basing its decision on the same ground, the Court of Appeal affirmed the judgment. 217 So.2d 468.

Upon application of plaintiffs, we granted certiorari to review the judgment. 253 La. 867, 220 So.2d 455. We granted review primarily because of grave doubts as to the correctness of the Court of Appeal's application of the law of contributory negligence to the facts. In discharging our appellate responsibility, however, we have reviewed the entire record.

As found by the Court of Appeal, the fatal accident occurred when Jimmy Macmurdo fired his rifle in the direction of his hunting companion. Plaintiffs assert defendant Guy P. Stubbs, Jr., was negligent because he permitted Jimmy Macmurdo to use the .22 rifle, allegedly more dangerous than a shotgun because of its greater range, and failed to supervise the youthful hunters during their bird shoot to protect them from accident.

■ If the death of Tommy Laney resulted from the defendant's fault, he is of course responsible in damages. LSA–C.C. Arts. 2315, 2316.[2] For liability to arise,

by whose fault it happened to repair it. * * * "

the plaintiffs must establish that defendant Stubbs violated a duty he owed to the deceased youth. Turner v. Caddo Parish School Board, 252 La. 810, 214 So.2d 153.

██ We have carefully reviewed the record and find no evidence of a breach of duty. All the boys had been hunting prior to the day of the accident. Stubbs had no knowledge of inexperience or ineptness on the part of Macmurdo, nor did he know which gun he was using. After admonishing the hunters to be careful, he returned home. Under the circumstances, he had no duty to supervise the bird hunt.

██ Alternatively, plaintiffs assert Romney Stubbs was negligent in entrusting the .22 caliber rifle to Macmurdo, thereby rendering his father liable under Article 2318 of the Louisiana Civil Code.[3] They rely upon Sutton v. Champagne, 141 La. 469, 75 So. 209.

> Art. 2316: "Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill."

3. Art. 2318: "The father, or after his decease, the mother, are responsible for

This theory of liability also lacks support in the record. As we have observed, Macmurdo had previously been hunting. He was generally familiar with guns and had no difficulty operating the rifle before the accident. Young Stubbs was unaware of any circumstance that would render it unsafe for his hunting companion to use the small rifle.

The decision in Sutton v. Champagne, supra, is factually inapposite. In that case, the bird shooting was being conducted in the street of a crowded city in violation of an ordinance prohibiting the discharge of firearms in the street.

We conclude there is no primary basis to sustain the liability of defendants. Having so concluded, we find it unnecessary to consider their defenses of contributory negligence and assumption of risk.

For the reasons assigned, the judgment of the Court of Appeal is affirmed at plaintiffs' cost.

> the damage occasioned by their minor or unemancipated children, residing with them, or placed by them under the care of other persons, reserving to them recourse against those persons.
>
> "The same responsibility attaches to the tutors of minors."