LeSUEUR, Judge.
Plaintiff brought this action on his own behalf and as administrator of the estate of his minor son, Stephen Sievert, for damages resulting from an injury to his son’s eye by a BB pellet. The named defendant is the insurer of Daniel Lyons, father of John Lyons, the boy who had control of the BB gun when it was accidentally discharged.
Plaintiff alleges the negligence of John Lyons in his handling of the BB gun. He sued for damages in the amount of $21,-800.00 for the eye injury, in addition to reimbursement for medical expenses incurred. Defendant filed a third party demand against plaintiff, Raymond L. Siev-ert, and Betty Joe Tindell Sievert, his wife, and their insurer, Continental Insurance Company, for contribution. The basis for the contribution plea is the alleged negligence of the plaintiffs in allowing their son and the Lyons boy to handle the BB gun with inadequate parental supervision.
The trial court, after a trial on the merits, rendered judgment in favor of plaintiffs, dismissing defendants’ third party demand, and awarding Raymond L. Sievert, personally, $285.00 as reimbursement for medical expenses, and, in his capacity as administrator of the estate of his son, $3,-120.00 for damages for personal injury.
Defendant, Western General Insurance Company, has perfected a suspensive appeal from only that part of the judgment allowing medical expenses and dismissing defendants’ third party demand. Thus, the sole issue before this court on appeal is the alleged negligence of the Sieverts.
On the afternoon of July 6, 1965, Stephen Sievert and John Lyons, both age 13, were at the Sievert home. The boys planned some “target practice” in the Siev-ert back yard with Stephen’s BB gun, a gift he had received on his twelfth birthday, some 13 months earlier.
Mrs. Sievert admittedly saw the gun in the boys’ possession and checked to see that John had his parents permission to shoot. She then left the home to go shopping. It was while she was away that the accident occurred, an accidental discharge which took place without warning as John turned from down range to give the gun to Stephen.
*231 Defendant alleges that Mrs. Sievert was negligent per se in allowing the two boys to handle the BB gun without parental supervision. Further, the defense contends that a BB gun is an inherently dangerous device and that its discharge within the city limits of New Orleans is a violation of Sec. 67-1 of the Code of the City of New Orleans. We do not agree.
Testimony in the trial transcript shows that young Sievert had extensive instruction in the proper use of the BB gun. His father testified that at the outset, his son was not allowed to shoot the gun unattended, but as the months passed and his experience increased, he was given more leeway. By the date of the accident, he was entirely confident of his son’s ability to handle the gun alone. Neither Mr. nor Mrs. Sievert knew that young Lyons was inexperienced and had no reason to believe that the boy, a 13-year old high school freshman, could not be left unattended with their son. We see no manifest error in the trial judge’s conclusion that Mrs. Sievert was not negligent in doing so. See Laney v. Stubbs, 255 La. 84, 229 So.2d 708, in which the same conclusion was upheld where four 13 and 14-year old boys were left unattended with shotguns and a .22 caliber rifle.
We also note that no reasonable amount of parental supervision would necessarily have prevented the accident. It happened in an instant, without warning, as the boy turned. There was no time in which even the most vigilant parent could have reacted to the situation, much less take action.
Both the argument that the BB gun was an inherently dangerous instrument (relying upon Phillips v. D’Amico, La. App., 21 So.2d 748) and the argument that its use violates Sec. 67-1 of the Code of the City of New Orleans, rest on the premise that there is no operative difference between a BB gun and an “air rifle” with which the Phillips case and the ordinance both deal. We cannot accept that premise.
The Sievert gun was a Daisy brand, spring operated, BB rifle of the sort sold in numerous toy departments throughout the state. Any threat it poses to public safety is in no way comparable to the dangers presented by a powerful compressed-air projectile gun.
For these reasons, the. judgment of the lower court is affirmed, at appellants’ cost.
Affirmed.