311 So.2d 921 (1975)
Joseph W. DAIGLE, Individually and as Administrator of the Estate of his minor son, Daryl Daigle
v.
Herman GOODWIN, Individually and as Administrator of the Estate of his minor son, Tommy Goodwin, and Travelers Insurance Co.
No. 10099.
Court of Appeal of Louisiana, First Circuit.
March 10, 1975.
Writ Refused June 25, 1975.
*922 William A. Norfolk, Baton Rouge, for defendants Herman Goodwin and the Travelers Inc. Co., appellants and third party plaintiffs.
Patrick W. Pendley, Plaquemine, for Edgar Murry, third-party defendant, appellee.
Before LOTTINGER and COVINGTON, JJ., and BAILES, Judge Pro Tem.
BAILES, Judge Pro Tem.
This is a tort action.
On May 17, 1971, twelve year old Ray Murry, son of Edgar Murry, was playing with eleven year old Tommy Goodwin, son of Herman Goodwin. The two boys were in the back yard of the Goodwin residence, and were shooting at various targets using two BB guns[1] (air rifles), both of which *923 belonged to Tommy, and to which Tommy's father permitted access.
A younger boy, eight year old Daryl Daigle, son of plaintiff, Joseph W. Daigle, and a playmate with Ray and Tommy, came by the Goodwin home, and apparently was teased by the two older boys, a not infrequent happening according to the testimony. Daryl testified that Ray and Tommy shot their air rifles in his direction on the occasion of this visit; however, this allegation was denied by both Ray and Tommy. In any event, all agreed that Daryl left "mad", went to his nearby home, procured his own air rifle and returned to the vicinity of the Goodwin home, though he did not enter the yard.
At this time, it appears undisputed that Tommy's gun was unloaded, and he was in the process of entering his home. Daryl shot his gun in the general direction of the other two older boys, and one shot hit Ray in the chest. Ray then aimed the gun he was using at Daryl and fired, and the projectile struck Daryl in the right eye, causing injuries thereto.
Joseph W. Daigle filed suit individually and as administrator of Daryl's estate against Herman Goodwin individually and as administrator of Tommy's estate, and also against Travelers Insurance Company (properly styled Travelers Indemnity Company), Goodwin's insurer under a homeowner's policy. Daigle filed no direct action against Edgar Murry, either individually or as administrator of Ray's estate. However, Goodwin and Travelers filed a third party demand against Murry, in his dual capacity, for any sums which they might be ordered to pay; similar demands were also filed by Goodwin and Travelers against Daigle, also in his dual capacity.
The trial court rendered judgment in favor of Daigle on the main demand against Goodwin and Travelers in the amount of $1,170.88 for past medical expenses and an additional $500.00 for future medical expenses, or a total of $1,670.88, with legal interest from judicial demand and for costs; and also rendered judgment in a like amount in favor of Goodwin and Travelers on their third party demand against Edgar Murry. No written reasons were assigned. Devolutive appeals were timely perfected by both Daigle and by Goodwin and Travelers.
We find no negligence on the part of Tommy Goodwin in loaning his air rifle to Ray Murry, nor do we find any negligence on the part of Herman Goodwin. We further find, under the present facts and circumstances, no coverage under the medical payments provisions of the homeowner's policy, and thus there is no basis for recovery by petitioner. Accordingly, we reverse.
Petitioner's basic argument is that Herman Goodwin was liable for the injuries to Daryl either (1) because of his direct negligence in allowing Tommy access to BB guns, or (2) that he was vicariously liable for Tommy's negligence or intentional acts.
Use and possession of air rifles among boys of the age here involved is certainly not uncommon. In a sense, petitioner's argument that Goodwin was negligent in allowing eleven year old Tommy ready access to such guns fails of its own weight, as it is apparent that petitioner's own eight year old son, Daryl, enjoyed equally ready access to a similar gun. It appears, furthermore, that Goodwin had previously instructed Tommy in the proper handling of guns and had observed Tommy's handling of guns on hunting trips. Lastly, even though Ray did state that prior to the date involved he had not shot or seen an air rifle, both Tommy and Daryl testified that the three of them had previously fired such guns together. In the absence of any evidence that Ray was mishandling the gun, or that he had mishandled air rifles on prior occasions, we find no direct negligence on the part of Herman *924 Goodwin in allowing his son access to the guns, even in the face of no warning not to loan the guns to others. We do find, furthermore that Goodwin had instructed Tommy that the guns were not to be taken from the yard, and that Tommy was to watch anyone using the guns. These instructions, we feel were reasonable in view of the character of the instrumentalities involved.
An air rifle (BB) gun is not the sort of dangerous instrumentality which gives rise to a particularly high standard of care. See: Sievert v. Western General Insurance Company, 235 So.2d 229 (La.App.4th Cir. 1970); Wagner v. Barbin, 12 La.App. 640, 125 So. 766 (1930).
Likewise, we find no negligence or intentional action on the part of Tommy for which Herman Goodwin can be found vicariously liable. The earlier altercation between the boys, if it could be labeled as such, had clearly been broken off when Daryl left the scene. The preponderance of the evidence seems to be that the earlier event consisted merely of teasing of Daryl by the two older boys. There is no doubt that Tommy participated in the teasing. However, our law is now settled that mere words, no matter how offensive, do not justify a battery. Morneau v. American Oil Company, 272 So.2d 313 (La.1973). When Daryl chose to return to the scene with his own air rifle, Tommy was no longer a participant, and no direct provocation by either Tommy or Ray was shown to have immediately preceded Daryl's decision to open fire on the two older boys.
We are inclined to believe that the trial court intended to award recovery only under the medical payments portion of the Travelers homeowner's policy, for the reason that the judgment speaks only in terms of medical expenses, and allows no recovery for general damages. The subject policy, however, does not by its terms cover the instant situation. It appears Daryl was standing outside the insured premises at the time the "shoot-out" occurred, and the following policy language is applicable to this case:
"The Travelers will pay to or for each person who sustains bodily injury caused by accident all reasonable medical expense incurred within one year from the date of the accident on account of such bodily injury, provided such bodily injury
(a) is sustained while on the insured premises with the permission of any Insured or
(b) is sustained elsewhere and
(1) * * *
(2) is caused by any Insured * * *"
The injury was caused by Ray Murry, who does not fit the definition of "Insured" within the above policy. Thus, if the trial court did intend to award recovery under the medical payments portion of the aforesaid policy, it was in error.
For the above reasons, the judgment of the trial court is reversed, and all demands of the plaintiff-appellant are hereby denied. Plaintiff-appellant, Joseph W. Daigle, is assessed with all costs of the trial court and this Court.
Reversed.
NOTES
[1] More correctly designated as an air rifle defined in Webster's New International Dictionary of the English Language, Second Edition (Merriam's 1954) as a toy rifle from which the projectile is propelled by a spring.