SOMMERYILLE, J.
Petitioner, a resident of the parish of Ouachita, and the owner of Big Oane Bluff plantation in St. Landry parish, alleges that in the year 19-12 there were three crevasses in the public levee along 'the Atchafalaya river, the waters from which backed up and overflowed his plantation and destroyed the crops thereon growing to the extent of $5,100. .
He further alleges that the land referred to lies between the Atchafalaya river on the east, a swamp on the south, and Bayou Petite Prairie on the west; and that the natural drain of the land is Bayou Petite Prairie, and, in times of high water, also the swamp on the south.
He then alleges:
“That several years ago the Texas & Pacific Railway Company, a corporation owning and operating a railroad in the state of Louisiana, with an office in New Orleans, constructed a dike, across the said swamp and said Bayou Petite Prairie, running from Melville northward through Rosa for several miles, which dike is 12 to 15 feet high. * * *
“That the water (from the crevasses) being prevented from flowing off through the above-mentioned natural courses by reason of the construction of said Texas & Pacific Railway Company of the dike above mentioned, backed up, inundated, and overflowed petitioner’s said land, destroying all the growing crops thereon, to the extent specified in paragraph 3 of this petition, during the month of June. * * *
“And petitioner believes, and so believing avers, that the dike was the sole cause of the overflow of his land and destruction of his crops by water.”
Defendant, answering, denied the allegations of plaintiff’s petition; and, after trial, there was judgment in favor of petitioner in the sum of $1,500.
[1] Defendant appealed; and in this court it filed an exception of no cause of action on the following grounds:
“That neither said petition nor the proceedings nor the record herein show any right or cause of action in said plaintiff and appellee to maintain this suit, or any cause of action known to the laws of Louisiana, inasmuch as said petition and record disclose that the sole injury complained of by said plaintiff resulted from an inundation of his property by water flowing from a crevasse in a public levee built on the bank of a navigable river.”
Reference to the quoted provision of the petition above given show that plaintiff did not base his suit for damages upon the inundation of his property by waters flowing from crevasses in a public levee. He says that defendant built a dike across the natural drains of his property, and he “believes and, so believing, avers that the dike was’ the sole cause of the overflow of his land and destruction of his crops by water.”
Defendant argues that the inundation resulting from a crevasse was a fortuitous event, or an irresistible force, for which it (defendant) cannot be held liable, if damages were wrought to plaintiff’s plantation thereby. But, taking the allegations of the petition as true, plaintiff has not, as we have seen, alleged that the crevasses in the public levees were the cause of the damage to him and his crops. He alleges that the building of the dam across the natural drainage courses was the cause of the water from the crevasses being held by the dike referred to, which were backed up upon his place.
In the case of Boatner v. Henderson, 5 Mart. (N. S.) 186, where damages were claimed because of injury occasioned by the erection of a mill by which a reflux of water was created, and the plaintiff could not use his mill as formerly, this court said:
“But on this subject we have a positive law of the Partidas, which declares that a man cannot erect a mill near another, so as to obstruct the current of water to that previously erected. It is true this law contemplated only the case of an injury done by preventing the water from descending, but the injury is the same where the water is thrown back. The object of the law was to protect old works of this kind from being impeded in their operation by the erection of new ones; and whether this is done by obstructing the current so that no water can reach the mill from above, or by sending so *939 tnueh. water back on it from below, so that the mill cannot be used, is a difference but in name, and we have no doubt the prohibition extends to the one act, as well as the other.”
And so in this case, where it is alleged that defendant has obstructed the flow of water through the natural drains of plaintiff’s property to such an extent as to prevent the water from running off in its natural courses, and has thus thrown back the water on plaintiff’s land to the destruction of his crops, the petition clearly discloses a cause of action:
[2] The evidence in the case is not as clear as it might he. The claims for damages are greatly exaggerated in the petition, and the testimony of the witnesses is not full or satisfactory. Plaintiff claims $5,100 as damages to 250 acres of cultivated land, which land was cultivated by his manager in part, and in part by tenants on shares. He alleges his cane crop to have been worth $2,000, but the evidence shows that instead of 40 acres there were only 5 acres planted in sugar cane, and that the tenant had made up his mind to abandon the crop before the inundation. He also alleges 50 acres to have been planted in corn; and the evidence shows that 30 acres, worth about $750, were planted. Plaintiff further claims the loss of a cotton crop worth $450, but the boll weevil was in that section of the country in 1912, and the whole cotton crop of the parish was destroyed. There was no testimony offered as to' the acreage planted in oats, for which plaintiff claimed $100. As nearly all of the IDlantation was planted on shares, plaintiff is entitled to only one-half of the damage to the corn crop.
The lespedeza, alleged to have been 30 acres, worth $1,800, was cultivated by lflaintiff’s manager for the benefit of the plaintiff; and the loss there amounted to $450.
- There is some discussion and argument as to whether the dike across the natural drainage courses caused the water to back up and destroy the crops of plaintiff.
[3] The dike or roadbed of the defendant company was 11 feet high, and there were two openings in it which permitted the water to flow. These two openings together were 54 square feet at the cross section, while Bayou Petite Prairie had an opening originally of 540 square feet. The dimensions of the swamp on the south are not given. These two openings, and the swamp, were sufficient to take care of the water from the first two crevasses, and permitted the escape in sufficient quantities to do no damage to the dike or to plaintiff’s property, as the waters there held had not overflown plaintiff’s lands, but when the waters from the third crevasse came down upon the waters from the first two, which were being held in to a large extent by the railroad embankment or dike, it spread over them to such an extent as to back up upon plaintiff’s property and to carry away a large part of defendant’s roadbed.
It wmuld seem from. the surrounding circumstances that the natural drains of plaintiff’s property had been sufficient to carry off all the water from the crevasses which had theretofore broken, and that they would have done so in 1912 if the railroad embankment had not dammed the bayou to the west and the swamp to the south.
The embankment, or roadbed, having caused the waters to be held and to be backed up over plaintiff’s plantation was the work of man; and it, and not the breaking, of the public levees, was the proximate, cause of the damage to plaintiff’s property, even if. a break in a public levee might be called a fortuitous event, or said to be due to an irresistible force. Crevasses have not been neld to be such by any decision of the court to which we have been referred, although they have not been of infrequent occurrence since Louisiana became a state of the Union.
*941 It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by reducing the amount of the judgment to $825,- and, as thus amended, it is affirmed; costs of this court to be paid by appellee.
DAWKINS, J., concurs in the decree.