345 So.2d 220 (1977)
Lenes JOUBERT, Plaintiff-Appellee,
v.
STATE of Louisiana Through the Louisiana STATE PARK AND RECREATION COMMISSION, Defendant-Appellant.
No. 5874.
Court of Appeal of Louisiana, Third Circuit.
April 13, 1977.
Rehearing Denied May 10, 1977.
*221 Frank P. Trosclair, Jr., Opelousas, and William R. Carruth, Jr., Baton Rouge, for defendant-appellant.
Fusilier, Pucheu & Soileau by A. Gaynor Soileau, Ville Platte, for plaintiff-appellee.
Before DOMENGEAUX, GUIDRY and ROGERS, JJ.
GUIDRY, Judge.
This matter was consolidated with the matter entitled Vernon Mire versus State of Louisiana through the Louisiana State Park and Recreation Commission, 345 So.2d 225, our Docket Number 5875, for purpose of trial in the district court and on appeal. The issues involved are similar in each case and evolve from a common set of facts. For the reasons hereafter set forth we decide the issues in both suits in this opinion but will render a separate decree in the case above referred to.
Plaintiffs in both suits seek the recovery of crop damages occasioned when their respective *222 crops of soy beans and milo allegedly flooded as a result of large volumes of water which flowed over and through the dam at Chicot State Park lake on September 5, 1973 and succeeding days. The trial court determined that a large portion of plaintiffs' planted crops were lost as a result of flooding and that the defendant was responsible for such damages which the trial court fixed as follows:
"The average price for beans in the area at the time of the loss was $5.00 to $5.50 per bushel and the average yield 26.5 bushels to the acre. However, they (Joubert and Mire) were contracting beans for $8.00 per bushel. The average price for milo or grain sorghum was $3.09 pert cwt. The average production was 3300 pounds.
Vernon Mire lost approximately 2300 bushels of soybeans and approximately 325,000 pounds of milo or grain sorghum. Lenes Joubert lost approximately 3,000 bushels of soybeans and approximately 500,000 pounds of milo or grain sorghum. Mr. Mire suffered a loss of $18,400 worth of beans and $10,042.50 worth of milo. Mr. Joubert suffered a loss of $24,000.00 worth of beans and $15,450.00 worth of milo.
The court feels that the low lying lands planted by petitioners near the bayou comprise approximately 50% of the property petitioners farmed and this area quite probably would have been flooded although the gates had not been opened and it is therefore the opinion of this court that an award of $14,221.25 to Mr. Mire and an award of $19,725.00 to Mr. Joubert to be justified under the circumstances."
Defendant has appealed. Plaintiffs have neither appealed nor answered the appeal of defendant.
The following facts are without dispute. The State of Louisiana is the owner of the land area known and designated as "Chicot State Park". Within the park area is a large "man made lake" or large impoundment of water contained within levees known as "Chicot Lake". The lake area was constructed and is maintained by the State through the aforesaid Commission. The level of water in the lake is controlled by a dam located at the conflux of the lake and Bayou Chicot. The top of the dam is approximately one foot lower than the top of the levees. Within the dam is located two gates each 5' × 5'. Percy J. Fontenot is the owner of certain farm lands just east of and adjoining the park, which farm lands border on Bayou Chicot. During the crop year 1973 Mr. Fontenot, under a verbal lease or share-crop agreement, allowed Joubert and Mire to farm these lands in soy beans and milo. Under the aforesaid agreement Fontenot was to receive one-fifth or 20% of the crops grown and harvested and Joubert and Mire were to receive the balance. During the months of July and August, 1973, the area in and around the park was subjected to a large amount of rain, none of which caused plaintiffs' crops to flood, however, the water level in the lake became extremely high. During the first days of September extremely heavy rains buffeted the area and the water level of the lake rose so high that by the 5th day of September, 1973, a large volume of water, estimated from 13" to thirty-nine (39) inches in height, was flowing over the dam into the already swollen Bayou Chicot. On the latter date the acting superintendent of the park, a Mr. Gerald Johnson, caused one of the dam floodgates to be opened about 3' which opening permitted an additional volume of water to flow out of the lake and into Bayou Chicot.[1] The gate was allowed to remain open until about noon on the 6th *223 day of September. Beginning with September 5, 1973 and for several days thereafter about two-thirds in area of the lands farmed by Joubert and Mire were flooded. The depth of the water on the Fontenot property was estimated at eighteen inches. As a result of the flooding plaintiffs lost the greater portion of their respective crops the exact amount thereof being disputed.
On the basis of the above facts, which as aforesaid are substantially without dispute, the trial court rendered judgment in favor of plaintiffs. Defendant asserts that the trial court erred in the following particulars:
(1) In finding that the opening of the flood gate on September 5, 1973 constituted negligence which proximately caused the crop damages. In this connection defendant additionally asserts that the trial court erroneously disregarded the uncontradicted testimony of its expert witness that the opening of the flood gate had no appreciable effect upon the flooding of the Fontenot property.
(2) In failing to find that plaintiffs were guilty of contributory negligence because they knowingly planted agricultural crops in an area which frequently floods.
(3) In rendering judgment in part on testimony received in evidence, over objection by defendant, contrary to that set forth in plaintiffs' pleadings.
(4) In awarding damages based upon their full ownership of the crops although it was established that Percy Fontenot was owner of 1/5th thereof.
There is no merit in defendant's primary contentions. This is not an action to recover damages ex delicto rather it is a suit for damages resulting from a proprietor's violation of the obligation imposed by R.C.C. Article 667 which reads as follows:
"Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him."
In such an action fault or negligence is not a necessary element for recovery. As stated in Hero Lands Company v. Texaco Inc., 310 So.2d 93, 97 (La.1975):
"As expressed in the Article, the principle is a limitation the law imposes upon the rights of proprietors in the use of their property. It is a species of legal servitude in favor of neighboring property, an expression of the principle of sic utere. An activity, then, which causes damage to a neighbor's property obliges the actor to repair the damage, even though his actions are prudent by usual standards. It is not the manner in which the activity is carried on which is significant; it is the fact that the activity causes damage to a neighbor which is relevant. Chaney v. Travelers Insurance Company, 259 La. 1, 249 So.2d 181 (1971). The article expresses, as this Court has often stated, a doctrine of strict liability which does not depend upon deliction. Craig v. Montelepre Realty Co., supra [252 La. 502, 211 So.2d 627 (1968)]; Gotreaux v. Gary, 232 La. 373, 94 So.2d 293 (1957); Fontenot v. Magnolia Petroleum Co., 227 La. 866, 80 So.2d 845 (1955); Devoke v. Yazoo & M. V. R. Co., 211 La. 729, 30 So.2d 816 (1947).
It does not follow, however, that Article 667 is the only basis upon which neighbors may seek redress for damages caused by proprietors in the vicinity. Article 2315 may also serve as a basis for recovery under appropriate circumstances. But when this authority is relied upon, fault must be proven. Article 2315 contemplates responsibility founded on fault, namely, negligence or intentional misconduct, including abuse of rights. The notion of fault in this context is conduct which violates the standard of reasonableness in the community, an act that a careful and prudent person would not undertake. By contrast, recovery under Article 667 may be granted despite the reasonableness and prudence of the proprietor's conduct, when the work he erects on his estate causes damage to his neighbor. Lombard v. Sewerage & Water Board, 284 So.2d 905 (La.1973)."
*224 By the same token, since negligence is not a factor, contributory negligence is not a defense. As stated in Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133, 140 (La.1971):
"The defense of contributory negligence which is urged here presupposes original negligence on the part of the defendant. This case is not a case where negligence is an ingredient of fault, and contributory negligence is not a defense."
In the instant case the State constructed and maintains the reservoir and dam structure in Chicot State Park. Fontenot owns the farm lands which adjoin this park which lands were being cultivated by plaintiffs under an agreement with Fontenot. Clearly under the circumstances plaintiffs and defendant were neighbors within the contemplation of R.C.C. Article 667. The trial court held that the work erected by the State caused damage to plaintiffs when the flood gate was opened allowing large volumes of water to escape the reservoir which in turn caused flooding of plaintiffs' crops. Under such circumstances defendant is responsible in damages to plaintiffs even though the State's actions may have been reasonable or prudent under the circumstances. Hero Lands Company v. Texaco Inc., supra.
Defendant asserts that the trial court's conclusion that the opening of the gates caused the flooding is manifestly erroneous and completely ignores and rejects the testimony of defendant's expert.[2] It is true that the trial court's conclusion rejects the conclusion of defendant's expert and that there is no contradicting expert testimony in the record. However, it is equally true that the conclusion of Mr. Meyer is completely contrary to the testimony of lay eyewitnesses to the effect that plaintiffs' crops flooded only after the gate was opened. The trial court accepted the testimony of these witnesses over the theoretical conclusion advanced by defendant's expert. In his written reasons the trial judge stated:
"The court is of the opinion that the opening of the gates caused a much faster rise of water in the already swollen bayou Chicot into which the runoff flows and the surrounding lands planted by petitioners and they became quickly inundated."
We find no manifest error in the trial court's ultimate conclusion as to the cause of the flooding. The theory advanced by an expert witness need not be accepted if it is contrary to the positive testimony of eyewitnesses. Mayon v. Delta Well Logging Service Inc., 167 So.2d 418 (La.App. 1st Cir. 1964), writs refused December 1, 1964, and cases therein cited.
Defendant next complains that the trial court erred in admitting evidence over timely objection, as to the actual amount of crops saved and the price received therefor which was contrary to the estimated amounts for these items which were set forth in plaintiffs' pleadings. Defendant asserts that it was prejudiced by the admission of this evidence as it bore upon the plaintiff's ultimate net loss of crops and the value thereof. Although the evidence received as to the amount of crops saved and the value thereof is somewhat at variance with the estimated amounts for these items as set forth in plaintiffs' petitions the total crops claimed to have been lost and the value thereof as prayed for by petitioners is far in excess of that allowed by the trial court. Under these circumstances we discern no error in the trial court's allowing and considering evidence as to actual amounts. It is well settled that technical rules of pleading no longer obtain and all doubt should be resolved in favor of the pleader to the end that substantial justice may be achieved. LSA-C.C.P. Article 854; Glass v. Vista Shores Club, 221 So.2d 304 (La.App. 4th Cir. 1969) and cases therein cited.
*225 Defendant finally contends that the quantum of the trial court award is excessive in that the damages awarded were based upon plaintiffs full ownership of the crops lost although it is established by the record that Percy Fontenot was owner of one-fifth thereof. We find merit in this contention.
The record clearly establishes that Percy Fontenot owned one-fifth of the crops lost. Mr. Fontenot was not a party to this suit. Plaintiffs have no right of action to sue and recover for the damages sustained by Mr. Fontenot. Miller v. Texas & P. Ry. Co., 148 La. 936, 88 So. 123 (1921). The trial court award clearly contemplates that plaintiffs were owners of the entirety of the crops grown on the flooded lands. Accordingly, we will reduce the trial court award by twenty per cent. Except as amended said judgment will be affirmed.
For the above and foregoing reasons the judgment of the trial court is amended so as to reduce the award to plaintiff to the principal sum of $15780.00 and except as amended same is affirmed. Defendant-appellant is to be taxed with such costs of this appeal as are assessable under LSA-R.S. 13:4521.
AMENDED AND AFFIRMED.
NOTES
[1] Defendant's expert testified that the additional volume of water which was allowed to flow into Bayou Chicot upon the opening of this gate was insignificant and did not cause the plaintiffs' crops to flood, they being already flooded as a result of the volume of water pouring over the reservoir and into Bayou Chicot. On the other hand plaintiffs and their witnesses all testified that the additional volume of water pouring through this opened gate caused the flooding. The trial court concluded that the opening of the gates caused a much faster rise in the already swollen bayou which caused the flooding.
[2] At trial the defendant presented the expert testimony of Mr. Hirsch Meyer, a graduate civil engineer with a specialty in hydraulic engineering. Mr. Meyer testified that the additional volume of water flowing through the opened gate was insignificant when compared with that flowing over the dam and that if not already flooded when the gate was open that plaintiffs' property would have flooded to the same extent.