351 So.2d 206 (1977)
Harold FALGOUT
v.
ST. CHARLES SEWERAGE DISTRICT # 3 et al.
No. 8370.
Court of Appeal of Louisiana, Fourth Circuit.
October 12, 1977.
Rehearing Denied November 10, 1977.
*207 Gordon Hackman, Boutte, for plaintiff-appellee.
Norman J. Pitre, Luling, for defendant-appellant, St. Charles Sewerage District No. 3.
Before REDMANN, GULOTTA and BOUTALL, JJ.
GULOTTA, Judge.
Defendant appeals from a $7,500.00 award for damages resulting from the back-up of sewage into plaintiff's home and onto plaintiff's lawn from a sewage disposal system constructed and maintained by the St. Charles Parish Sewerage District. We affirm.
The primary thrust of defendant's appeal is that plaintiff failed to carry his burden of proving negligence on the parts of the Board of Supervisors of the District or any of its employees. According to defendant, the sewerage system was properly constructed in accordance with recognized standards and properly maintained. Defendant claims that the sewerage connections coming into plaintiff's home are below grade, and during excessive rains an inordinate accumulation of water in the sewerage system results, thereby causing the sewage to back up and overflow into the home.
Defendant additionally claims that the trial judge erroneously awarded damages for mental pain and suffering, inconvenience and discomfort. Because plaintiff made no showing of actual damages such as stained carpeting, damaged furnishings or business losses, defendant claims the trial judge erred in granting the $7,500.00 award.
The facts are that prior to the construction of the sewerage system, plaintiff's home, like others in his area, was serviced by a septic tank. In 1969, plaintiff connected into the system. This connection was approved by an inspector of the Sewerage District in August, 1969. Apparently, the inspection procedure did not include a determination whether the connection into the property owner's home was above or below grade. The inspection of the installation involved examination of the pipe size, the joints, the bedding, the cleanouts and the conduction of a rolling ball test to ascertain whether or not the grade of the slope was adequate and to ascertain whether the gravity flow system was free from obstruction.
According to plaintiff, problems with the sewerage system commenced as early as May, 1970. Some corrections were effected after complaints were made by the property owner. A maintenance man for the Sewerage District testified that constant complaints had been received from plaintiff as *208 early as 1973. (His testimony was that plaintiff had complained constantly for three years prior to the February, 1976 trial date.) The August 14, 1975 minutes of the Board show that plaintiff presented his complaints to it at that time.
The record is clear that plaintiff's problem is caused by the fact that the elevation of the sewage pipe which enters plaintiff's home is below the elevation of the manhole cover at the surface of the street through which the main line runs. When excessive water accumulates in the system, resulting from an inordinate amount of rainfall, the water backs up into plaintiff's home.
The civil engineer who designed this system testified that the problem may be eliminated by a pump which could be used to pump waste from the house into the system when an excessive accumulation of water occurs. Another suggested method of elimination was to raise the elevation of the pipe which enters into plaintiff's home above the elevation of the manhole (at the street surface).
According to plaintiff, he had never been advised, before trial, by the employees of the Sewerage District that the problem emanated from the below-grade construction of his home. Plaintiff testified that the house was constructed on 16-inch pillars. The secretary-treasurer of the Board stated that to his knowledge no one had ever told Falgout his house was "too low". A maintenance man employed by the District indicated that he thought he had mentioned the below-grade condition of the house to plaintiff sometime in 1975. In addition to the elevation problem, testimony from the secretary-treasurer of the District, an inspector and the engineer indicated that another reason for plaintiff's problem may have been surface water infiltration into the system at various places along the system and pumps incapable of handling the excessive water during heavy rains.

SEWERAGE DISTRICT'S LIABILITY
LSA-R.S. 33:4004 provides:
§ 4004. Compelling connection with sewerage system
"Any municipal corporation which has or which may hereafter construct, acquire, extend, or improve a sewerage system as a revenue producing public utility, shall compel the connection therewith by all owners of premises within three hundred feet of the sewerage system, and the governing authority of the municipal corporation may adopt the necessary ordinance or resolution enforcing the connections and exacting penalties for non-compliance therewith." (emphasis ours)
LSA-R.S. 33:4041 further provides:
§ 4041. Compelling connection with sewerage system
"Municipalities and sewerage districts having a public system of sewerage may compel the connection therewith by owners of premises within three hundred feet of the public sewer and may compel owners to connect with water mains or provide other means for flushing purposes."
Although the record fails to contain the ordinance providing for the construction of the sewage disposal system adopted prior to plaintiff's connection into the system, it does contain an ordinance no. 74- adopted by the governing authority of St. Charles Parish and by the Board of Supervisors of the Sewerage District in January, 1974, requiring property owners, at their expense, to connect into the system.[1]
When any municipality or governing body becomes empowered by ordinance or statute to construct a sewage disposal system, residents to be serviced by the system *209 are compelled to connect into that system. In Chandler v. City of Shreveport, 169 La. 52, 124 So. 143 (1929), the Louisiana Supreme Court stated that when a municipality or governing body exercises the responsibility to construct drains and sewers, "It is the duty of the municipality to take care of the water so accumulated if reasonably practicable." In a 1935 sewage back-up case, Urban Land Co. v. City of Shreveport, 182 La. 978, 162 So. 747 (1935), the Louisiana Supreme Court, through Chief Justice O'Niell, stated that the liability of municipal corporations, in cases of this kind, is based upon a finding of "negligence in the maintenance or operation of a sewerage or drainage system". However, the Second Circuit in Hamilton v. City of Shreveport, 180 So.2d 30 (La.App. 2d Cir. 1965), writ denied, 248 La. 700, 181 So.2d 399 (1966), in a case where part of plaintiff's property became inundated and was washed away by the City's manipulation of flood gates at a dam, the court, in affirming an award in favor of plaintiff, applied LSA-C.C. art. 667[2] and cited Gulf Insurance Co. v. Employers Liability Assur. Corp., La.App., 170 So.2d 125, 127 (1965) which stated that the liability under this article ". . . is absolute and that proof of negligence is not required in order to recover for a violation or breach thereof". Interestingly, the Louisiana Supreme Court denied writs in the Hamilton case and assigned the following reason:
"Writ denied. The result reached by the Court of Appeal is correct under the provisions of Art. 2315 of the Civil Code."
The First Circuit in Sharon v. Connecticut Fire Insurance Company, 270 So.2d 900 (La.App. 1st Cir. 1972), on rehearing, in a case where sewage backed into plaintiff's property, stated that once the municipality has compelled a plaintiff to connect to its sewerage system, the municipality incurs the obligation to dispose of the sewage properly. Although finding that the damage to plaintiff's property resulted from negligence of the City's employees, the court went on to say,
"* * * Even if there be no proof of negligence on the part of the City's employees, the evidence, nevertheless, clearly warrants imposition of liability on the basis of violation by the City of either Louisiana Civil Code Articles 660 or 667."
The court went on to say, "The fact that this breach might have occurred without negligence does not make it inactionable." Following this decision, the First Circuit, in Carr v. City of Baton Rouge, 314 So.2d 527 (La.App. 1st Cir. 1975), writ denied, 318 So.2d 53 (La.1975), predicated an award to plaintiff for damages resulting from overflowing commodes on LSA-C.C. art. 667. Recognizing that the record did not support a holding founded on negligence, the court went on to say that judgment is warranted under the application of LSA-C.C. art. 667, the liability without negligence article. Writs were denied by the Louisiana Supreme Court.
In a comparatively recent case, the Second Circuit, in LaCroix v. Travelers Indemnity Company, 333 So.2d 724 (La.App. 2d Cir. 1976), rehearing denied en banc, stated:
"* * * Although we find these facts do not support a finding of negligence, we do find the trial judge properly found the plaintiffs suffered damages which were caused by the sewer backing up. Further, the evidence clearly warrants imposition of liability on the basis of violation of La.C.C. Art. 667 as interpreted in Sharon v. Connecticut Fire Insurance Company and Carr v. City of Baton Rouge, supra."
Based on the jurisprudence as we appreciate it, we conclude that the liability of a municipality or a sewerage district, where damages have been sustained as a result of the back-up of sewage into a property owner's home, is based upon the absolute liability set forth in LSA-C.C. art. 667.
*210 In the instant case, although the evidence does not show that the Sewerage District negligently or improperly failed to maintain the system below recognized standards, the record clearly establishes that plaintiff was not notified, prior to the time he sustained damage, of the cause of the problem, although the employees of the Sewerage District had been aware of the problem. Under these circumstances, we hold that liability attaches to a municipality or sewerage district where plaintiff has established damages resulting from sewage back-up into his home from a sewage disposal system constructed and maintained by the municipality or sewerage district.

DAMAGES
Our review of the record indicates that the award in the instant case is neither excessive nor inadequate. We find no merit to defendant's claim that in the absence of showing actual damages, plaintiff is not entitled to recover for mental anguish, worry and inconvenience. The court in Carr included in its award damages for mental anguish in addition to actual damages. In accord with the First Circuit (in the Carr case), we conclude that mental anguish and inconvenience in these cases are appropriate items of damage.
Plaintiff stated that the trouble commenced as early as 1970. He testified that when excessive accumulation of water occurred in the system, the overflowing toilet created a "mess in the bathroom". On occasions during heavy rain, according to plaintiff, the bathroom could not be used for a period of approximately 65-68 hours. Mrs. Delta C. Falgout, plaintiff's wife, generally corroborated the testimony of her husband but added that on occasions when the toilet was not functioning, she was compelled to use the facilities at her daughter's place approximately a block away. She described the incidents of sewage back-up occurring on several occasions. Plaintiff's daughter testified that there was, on occasion, an accumulation of raw sewage in the yard and in the ditch in front of plaintiff's house. The testimony considered, we cannot say that the $7,500.00 award constitutes an abuse of the trial court's discretion. The judgment is affirmed.
AFFIRMED.
REDMANN, J., dissents in part.
REDMANN, Judge, dissenting in part.
Under C.C.P. 2164's authority to render any judgment which is proper upon the record, we should enjoin the sewerage district to remedy plaintiff's predicament by installing a pump or otherwise within a time to be fixed by the district court (and we should reduce the damage award to $1,000). The awarding of large general damages for mental anguish and inconvenience (rather than as cost of pump or other remedy) might ultimately teach the sewerage district the lesson, but meanwhile plaintiff does not obtain full relief.
NOTES
[1] Section 5-09 provides:

"In all buildings in which any building drain is too low to permit gravity flow to the public sewer, sanitary sewage carried by such drain shall be lifted by approved artificial means and discharged to the building sewer."
The record fails to disclose that employees of the Sewerage District identified plaintiff's elevation problem when the inspection was made in 1969. Apparently, plaintiff learned of the problem only after the back-up occurred and the Board and its employees were notified of the problem.
[2] LSA-C.C. art. 667 reads as follows:

Art. 667. Limitations on use of property
"Art. 667. Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him."