370 So.2d 1286 (1979)
Gerald L. ROMERO, Plaintiff-Appellant,
v.
TOWN OF WELSH, Louisiana, Defendant-Appellee.
No. 6928.
Court of Appeal of Louisiana, Third Circuit.
April 11, 1979.
Rehearing Denied June 6, 1979.
*1287 Charles L. Bull, Jr., Welsh, for plaintiff-appellant.
Stockwell, Sievert, Viccellio, Clements & Shaddock by John S. Bradford, Lake Charles, for defendant-appellee.
Before WATSON, GUIDRY and FORET, JJ.
WATSON, Judge.
Plaintiff, Gerald L. Romero, appeals from a judgment dismissing this suit for damages *1288 resulting from the backup of sewage into his home. Plaintiff contends that the defendant, Town of Welsh, was negligent in its operation and control of the sewage system; that the doctrine of res ipsa loquitur applies, since the evidence suggests defendant's negligence as the most plausible explanation of the accident; and, alternatively, that the Town of Welsh is strictly liable for any damages resulting from overflow of sewage.
Defendant asserts that the plaintiff has failed to carry his burden of proving negligence and denies the application of res ipsa loquitur, claiming that this doctrine is unavailable without some indicia of negligence. Additionally, the Town of Welsh claims that plaintiff may not recover under a theory of strict liability because plaintiff assumed the risk of the accident.
FACTS
The Town of Welsh owns, operates and maintains a sewage disposal system serving the town and the surrounding area. Defendant asserts that the system was properly constructed and is maintained in accord with recognized standards. The system utilizes a gravitational flow to transport sewage to the disposal plant located at the lowest point of the network. The system is not water tight. It is designed to accommodate some natural seepage when there is excessive rainfall. The network has a projected capacity of 500,000 gallons per minute without producing any backlog or stoppage of the natural flow.
On November 19, 1976, plaintiff was advised by his son that the bottom floor of his two story home was covered with sewage entering through the first floor commodes and drains. Plaintiff subsequently found approximately one inch of sewage on the bottom floor of his home. A relief valve installed by the previous homeowner on plaintiff's property allowed overflowing sewage from the main system to bypass the home and enter a specially designed drainage canal. This valve had been closed by an unknown party. After plaintiff opened the valve, the flow of sewage into his home was alleviated. Romero then informed the Welsh officials of the incident.
Bobby Louviere, the municipal maintenance supervisor, examined the manhole covers of the main sewage system to determine if any blockage had occurred. There had been a heavy rainfall and the main line was full, but Louviere reported that the sewage was flowing. Later investigation revealed that 440,000 gallons per minute had passed through the system at that time. Louviere detected that the sewage in plaintiff's line was flowing from the direction of the main sewage system. Although Louviere examined the main sewage line for blockage, he did not examine the secondary line to which plaintiff's system was connected. This intermediary line was part of the municipal system and collected sewage from plaintiff's home and deposited it in the central sewer further down the line. This secondary channel was necessitated by the fact that plaintiff's home was built approximately sixteen inches below the level of the nearest manhole cover on the main sewage canal. Although Louviere did not examine plaintiff's line for blockage, Romero's system had recently been cleared and serviced by defendant and found free from any debris which would prevent the flow of sewage into the municipality's system.
According to the plaintiff, sewage had backed up into his lines on previous occasions. His home was the next lowest point of the sewage system after the municipal disposal plant. There was testimony that, when an overload occurred at the plant, the sewage might back up towards plaintiff's home. Apparently, the relief valve had been installed to prevent this possibility. The valve was not constructed nor maintained by defendant, but appears to have been a safety measure undertaken solely for the benefit of plaintiff's predecessor in title. The record does not establish whether plaintiff had any knowledge of previous difficulties in association with the sewage system on his property nor is it apparent that defendant was cognizant of these difficulties.
Based upon the above facts, the trial court concluded that plaintiff was not entitled to recovery because he had purchased a home which he knew was in a low lying *1289 area and subject to sewage problems and that he had failed to take adequate precautions to insure that the relief valve remained open. The trial court found that the defendant was not negligent in its maintenance, operation and control of the local sewer system and therefore not liable to plaintiff.
LIABILITY
When a municipality or governing body undertakes the responsibility of constructing drains and sewers, it has a duty to provide for the adequate disposal of accumulated water and sewage. Chandler v. City of Shreveport, 169 La. 52, 124 So. 143 (1929). See LSA-C.C. art. 660.[1] In the case of Urban Land Co. v. City of Shreveport, 182 La. 978, 162 So. 747 (1935), the doctrine of res ipsa loquitur was applied to infer negligence on the part of a municipality where sewage had backed up into plaintiff's home. The Court reasoned that the accident would not have occurred had those responsible for the system's management and control exercised proper care. More recent jurisprudence has based responsibility on strict liability under LSA-C.C. art. 667.[2]Hamilton v. City of Shreveport, 180 So.2d 30 (La.App. 2 Cir. 1965), writ denied, 248 La. 700, 181 So.2d 399 (1966); Sharon v. Connecticut Fire Insurance Company, 270 So.2d 900 (La.App. 1 Cir. 1972), writ denied, 275 So.2d 788 (La., 1973); Lombard v. Sewerage and Water Board of New Orleans, 284 So.2d 905 (La., 1973); Carr v. City of Baton Rouge, 314 So.2d 527 (La.App. 1 Cir. 1975), writ denied, 318 So.2d 53 (La., 1975); and LaCroix v. Travelers Indemnity Company, 333 So.2d 724 (La.App. 2 Cir. 1976), writ denied, 338 So.2d 112 (La., 1976).
In the recent case of Falgout v. St. Charles Sewerage Dist. No. 3, 351 So.2d 206 (La.App. 4 Cir. 1977), writ denied, 353 So.2d 1047 (La., 1977), plaintiff sued for damages resulting from sewerage backup. The evidence revealed that plaintiff's sewage connection was below grade which caused overflow into her home when excessive water accumulated within the system. The court stated:
"[W]e conclude that the liability of a municipality or a sewerage district, where damages have been sustained as a result of the backup of sewage into a property owner's home, is based upon the absolute liability set forth in LSA-C.C. art. 667." 351 So.2d 209.
This court also concludes from the jurisprudence that a municipality is held to strict liability for any damage incurred by a property owner due to the overflow of sewage into a home or business established from a municipally owned and operated sewer system. Although there is no indication of negligence by the defendant in its maintenance of the sewer system, the record clearly establishes that the plaintiff was damaged by a backup of sewage from defendant's system and liability attaches.
Defendant contends that plaintiff assumed the risk of this accident by failing to keep the relief valve on his property open after purchasing a home in a low lying area. Assumption of the risk is a valid defense to an action founded upon strict liability. Wunstell v. Crochet, 325 So.2d 727 (La.App. 4 Cir. 1976). However, plaintiff must have known and understood the risk which he incurred and have freely and voluntarily undertaken it. Wilson v. Voss, 361 So.2d 312 (La.App. 1 Cir. 1978), writ denied, 363 So.2d 214 (La., 1978); Guillotte v. Houston General Ins. Co., 368 So.2d 1026 (La., 1979). Knowledge is a mainstay of *1290 this defense, and this element must be established by a preponderance of the evidence. Prestenbach v. Sentry Ins. Co., 340 So.2d 1331 (La., 1976). Equally as important is the requirement that plaintiff's action be intended to operate as a consent to relieve the defendant of all duty owed by him to the plaintiff. Laney v. Stubbs, 217 So.2d 468 (La.App. 1 Cir. 1968), writ issued, 253 La. 867, 220 So.2d 455 (1969), affirmed, 255 La. 84, 229 So.2d 708 (1969). Where there is no evidence that plaintiff intended to afford this type of consent to the defendant, the doctrine of assumption of the risk is inapplicable.
Under the facts presented here, assumption of the risk does not apply. The plaintiff undertook no activity which could be construed as a voluntary effort to relieve the defendant of liability. The relief valve was closed by some unknown person without the authority or consent of the plaintiff. Clearly, such action does not constitute the "voluntary assumption of a known risk." Nor was it ever established that plaintiff had a definite knowledge of any risk of that type when he purchased the home. Merely because plaintiff lived in a low lying area gave him no cause to expect that the city sewerage system was inadequate to properly service his residence. Likewise, contributory negligence has not been established even if contributory negligence were a defense to strict liability. See Joubert v. State, Through State Park, Etc., 345 So.2d 220 (La.App. 3 Cir. 1977).
DAMAGES
Plaintiff contends that he is entitled to receive $12,530.24 for property damage, mental anguish, inconvenience and discomfort resulting from the sewage backup. Plaintiff testified that it was necessary to replace the entire downstairs carpet at a cost of $2,058.90. The old carpet had become waterlogged and had retained a pronounced odor from the sewage. Defendant offered no evidence to controvert the accuracy of plaintiff's computation. When property is damaged by the legal fault of another, the objective in awarding damages is to restore the property as nearly as possible to the state it was in immediately preceding the damage. Coleman v. Victor, 326 So.2d 344 (La., 1976). In previous cases where the plaintiff has sought recovery of damages for carpet ruined by overflowing sewage, the courts have allowed recovery of the replacement cost of the damaged carpet. LaCroix, supra; Barbay v. Parish of East Baton Rouge, 343 So.2d 235 (La.App. 1 Cir. 1977), writ denied, 345 So.2d 62. Plaintiff is entitled to recover $2,058.90 in damages, the replacement cost of his carpet.
Mr. Romero also seeks recovery for damages to linoleum and tile flooring located within the home as well as damage to walls and baseboards covered by the sewage. However, plaintiff failed to introduce any evidence to support recovery for these items. None of the flooring or baseboards have been replaced and plaintiff's allegations are founded solely upon his personal estimates of what it would cost to restore these items to their proper condition. Similarly, plaintiff's claims for loss of wages, cost of cleaning and reimbursement of cleaning supplies is without any evidentiary support. For this reason, plaintiff's claims are denied as to his recovery for these items.
Finally, plaintiff asserts that he is entitled to recover damages stemming from his mental anguish, inconvenience and discomfort and loss of use of his home occasioned by defendant's liability. Damages for mental anguish due to the backup of sewage into a home are recoverable. In Falgout, supra, the court awarded $7,500 for plaintiff's mental anguish from sewerage overflow. In Barbay, supra, $2,500 was awarded for mental anguish where the sewage backup produced an overwhelming lingering stench. In this case, the odor remained for at least two weeks; plaintiff and his family were consequently prevented *1291 from using any of the downstairs of the house during this period. All testimony considered, this court finds that an award of $2,500 is sufficient to compensate plaintiff for his mental anguish and the inconvenience resulting from the backup of sewage into his home.
Accordingly, the judgment appealed from is reversed and set aside. It is ordered, adjudged and decreed that there be judgment herein in favor of plaintiff, Gerald L. Romero, and against defendant, the Town of Welsh, Louisiana, in the amount of $4,558.90 with legal interest to run from date of judicial demand. All costs are assessed against the defendant, Town of Welsh, Louisiana.
REVERSED AND RENDERED.
NOTES
[1] LSA-C.C. art. 660:

"It is a servitude due by the estate situated below to receive the waters which run naturally from the estate situated above, provided the industry of man has not been used to create that servitude."
"The proprietor below is not at liberty to raise any dam, or to make any other work, to prevent this running of the water."
"The proprietor above can do nothing whereby the natural servitude due by the estate below may be rendered more burdensome."
[2] LSA-C.C. art. 667:

"Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him."