SAUNDERS, Judge.
Plaintiff-appellant, Gerald D. Saucier (Saucier), contracted on June 24, 1982, to purchase a home located at 25 Eucalyptus Street, Sulphur, Louisiana, from James H. Fontenot and Sharon Ann Fontenot. The Fontenots are parties to this litigation but are not involved in the summary judgment proceedings before us as the two cases have not been consolidated.
The present proceedings involve a summary judgment granted in favor of defendant-appellee, City of Sulphur (the City), and against plaintiff for damages suffered by the plaintiff when a water line broke beneath the plaintiffs house causing damage to the house.
Plaintiff Saucier alleges that the City owned the water line which was located beneath his home and was the source of the alleged damage; that the City knew or should have known that the water line still had water running through it and failed to shut the line off; and that this failure resulted in or contributed to the damages suffered by Saucier which included a crack in the foundation of the building.
The City, in its motion for summary judgment, took the position that it had no obligation or duty to monitor or inspect the water lines which were abandoned, nor did it have a duty to provide maintenance or repair in connection with the line. Further, the City contends that the water line was not in the custody and control of the City, as the City did not build, maintain or even have knowledge of the location of the line prior to the damage to the home which forms the. basis of this action. Finally, the City contends that it did not own, operate or control the water line in question.
The motion for summary judgment was filed by the City and a hearing was held on November 13, 1992. On November 23, 1992, judgment was signed dismissing plaintiffs action as to the City of Sulphur. An appeal to this court has been perfected by plaintiff. We reverse and remand.
DISCUSSION
The City, in its motion for summary judgment, relied in part upon affidavits of two of its employees, Earl Thibodeaux and Terry LeBlanc, which provide substantially the same factual information in pertinent part, as follows:
2.
“That he is familiar with the area surrounding and including Eucalyptus Street in Sulphur. To the best of his knowledge, *1266 this area was originally used for company or government housing for Air Force personnel and employees of Cities Service Refinery. This original housing, including the water and sewer lines servicing each house, were built and maintained by the government and Cities Service. These original houses were later removed and the land was sold to individual developers and contractors. When the houses were removed, the water and sewer lines were left in place and were not disconnected from the water main.
3.
“That the area surrounding and including 25 Eucalyptus Street in Sulphur, Louisiana, was subsequently annexed by the City of Sulphur on October 9, 1968. That the City of Sulphur had no notice nor acquired any knowledge of the location of the old, abandoned lines in the Eucalyptus Street area as the only maps in existence with regard to the abandoned lines in the annexed area only show the location of the lines in the easement and not the location of the lines from the easement (property line) to the serviced residents.
4.
“That at no point in time did the City of Sulphur own, operate, control or have custody of the old, abandoned water lines originally constructed by the government and Cities Service to provide public works to the old government housing.
5.
“That the City of Sulphur did not build, monitor, inspect, test, repair, determine the integrity or suitability of these lines for their intended purpose or in any manner whatsoever provide maintenance to the old, abandoned water lines.
6.
“That the City of Sulphur had no notice of the alleged defect in the old, abandoned water lines prior to the occurrence which lead to the alleged damages which form the basis of this lawsuit.
7.
“That the City of Sulphur’s first notice of this problem occurred when Gerald Saucier called to complain of water leaking in his yard. A city crew went out to investigate to ascertain if the problem was in the fines actually owned by the City of Sulphur which provided water to the Plaintiffs residence. After determining that the water leakage originated in the old, abandoned water lines, Affiant informed Mrs. Saucier of the problem and her responsibility to repair the leaking fine since the home owner is responsible for all damage to the water fine from the edge of the property fine to the residence. However, since a large amount of water was leaking from the old abandoned fine, saturating the property and adjoining property and wasting large amounts of water from the city water main, the city crew capped off the abandoned fine as a courtesy to the Plaintiff to avoid further damage to his property.”
This court notes with particular interest the language in the affidavits indicating that the leakage of water was “wasting large amounts of water from the city water main....” This language tells us that the water which caused damage to the plaintiffs property was, in fact, the City’s water and was coming from the City’s water main. The court further notes that the record is devoid of any evidence to suggest how the City’s water was proceeding from the City’s water main, through the City’s pipes, into the old, abandoned pipes which were allegedly never owned, operated, controlled, built, monitored, inspected, tested, repaired or in the custody of the City of Sulphur, but rather were constructed by the government and Cities Service to provide public works to the old government housing and subsequently abandoned. The record provides no information on this point.
It is clear from these affidavits that the water which damaged the plaintiffs home *1267 was owned by the City of Sulphur and was coming from the City’s water main. Beyond this, very little is clear. The record is silent as to when and how these two systems were connected and why the City could not have disconnected the two systems if, in fact, they were once connected. The record is completely silent on these issues.
We note that liability has been found in similar cases on a negligence theory under LSA-C.C. art. 2317 and on a theory of strict liability as imposed by LSA-C.C. 667. In the similar ease of Smith v. Town of Logansport, 395 So.2d 888 (La.App. 2d Cir.), writ denied, 400 So.2d 1379 (La.1981), the Second Circuit, in discussing LSA-C.C. art. 667, observed as follows:
“Article 667 is therefore a limitation the law imposes upon the rights of proprietors in the use of their property. It is a species of legal servitude in favor of neighboring property, an expression of the principle of sic utere. An activity, then, which causes damage to a neighbor’s property obliges the actor to repair the damage, even though his actions are prudent by usual standards. It is not the manner in which the activity is carried on which is significant; it is the fact that the activity causes damage to a neighbor which is relevant. This being ascertained, it remains only to calculate the damage which ensued.”
Smith, supra, 395 So.2d at 890. See also Romero v. Town of Welsh, 370 So.2d 1286 (La.App. 3d Cir.1979).
In the present case, summary judgment is not appropriate as the evidence presented by the mover is not sufficient to resolve all material fact issues. LSA-C.C.P. art. 966. For these reasons, the judgment of the trial court is reversed and set aside and this matter is remanded to the trial court for farther proceedings consistent with the views expressed herein.
All costs of this appeal are assessed to the City of Sulphur. The assessment of costs at the trial level is to wait a final disposition of this matter.
REVERSED AND REMANDED.