663 So.2d 216 (1995)
Dan P. BRANCH and Sonya Branch, Plaintiffs-Appellees,
v.
The CITY OF LAFAYETTE, Defendant-Appellant.
No. 95-298.
Court of Appeal of Louisiana, Third Circuit.
October 4, 1995.
*218 James Louis Daniels, Lafayette, for Dan P. Branch et al.
Paul Albert Landry, Lafayette, for City of Lafayette, LA et al.
Before: SAUNDERS and SULLIVAN, JJ., and KNIGHT,[1] J. Pro Tem.
SAUNDERS, Judge.
The trial court rendered judgment in favor of the plaintiffs finding the City of Lafayette liable for water damages sustained to a room in plaintiffs' home and reduced the plaintiffs' recovery by their comparative fault. The City of Lafayette appealed this adverse judgment and the plaintiffs answered the appeal. We affirm the trial court's finding of liability on the part of the City of Lafayette. However, we amend the award of damages and allocation of fault.

FACTS
On October 27, 1991, Lafayette experienced a heavy rainfall of up to 5.79 inches within a five hour period. As a result of this rainfall, an addition to the plaintiffs' home, which was located below street level, was flooded and several of their personal possessions were damaged or destroyed. Plaintiffs' home is constructed on a lot which begins at street level and then slopes downward to the rear of the lot. The original construction of the house had the back portion suspended approximately nine feet above the ground on pilings. Previous owners enclosed the space between the pilings and used it for storage. It was eventually finished and used by the plaintiffs as a downstairs study.
There are two drainage systems in the plaintiffs' subdivision at issue in this litigation. The Domingue & Szabo (D & S) project was constructed in 1972 and was designed to solve a drainage problem downstream from the Branch's property. During the existence of only the D & S project, the excess water traveled through a swale that traversed the Branch's property. In 1982, a second system, referred to as the Hebert project, was constructed to solve an erosion problem occurring upstream from the Branch's property. The Hebert project contained 42" underground pipes which were installed upstream from the Branch's property and the swale was partially filled in.
*219 The trial court found the City liable based on its finding that the Hebert project failed to provide for the increased rate of flow of water to the Branch's property. However, the trial court assessed the Branches' with 38% fault because of their failure to take steps to mitigate their damages.
The City appeals alleging four assignments of error. The plaintiffs answered the appeal.
ASSIGNMENTS OF ERROR
I. The district court erred in imposing liability on the City of Lafayette for damages allegedly caused by the condition of a drainage system within its care and custody where the City did not have actual or constructive notice of the particular vice or defect which allegedly caused the damage prior to the occurrence, and where the City did not have a reasonable opportunity to remedy the defect.
II. The district court erred in failing to conclude that the flooding which occurred in the room below the main living area of the plaintiffs' home was a force majeure, or an act of God.
III. The district court erred in allocating any fault to the City of Lafayette where the plaintiffs failed to act reasonably to prevent or reduce their damages.
IV. Plaintiffs failed to prove their entitlement to recover for miscellaneous items of damages or architectural drawings with sufficient and competent evidence.

ANSWER TO APPEAL
The plaintiffs answered the appeal alleging that the trial court erred in assessing any fault on their part. The plaintiffs further alleged that the general damages awarded by the trial court are grossly inadequate. To the extent these issues overlap defendant's, they will be treated simultaneously.

MERITS
A court of appeal may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
By the defendant's first assignment of error, the City of Lafayette argues that it cannot be held liable unless the plaintiffs prove that it had actual or constructive knowledge of the defect that allegedly caused the damage and a reasonable opportunity to remedy this defect pursuant to La.R.S. 9:2800(B). However, this argument overlooks the plain language of that statute which reads as follows:
[N]o person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity have actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
The statute clearly states that this requirement of knowledge of defect and opportunity to remedy the defect only precludes a cause of action based solely upon La.Civ.Code art. 2317. Plaintiffs also alleged a cause of action under La.Civ.Code art. 667 which reads as follows:
Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.
La.Civ.Code art. 667 imposes strict liability upon a municipality for any damage suffered as a result of overflow from a municipally owned and operated drainage or sewer system into a home or business. Romero v. Town of Welsh, 370 So.2d 1286 (La.App. 3 Cir.1979); Lombard v. Sewerage and Water Board of New Orleans, 284 So.2d 905 (La. 1973).
In finding the City of Lafayette liable, the trial judge stated:

*220 [T]he preponderance of the evidence indicates that the problem was in fact caused by a faster buildup of water at the Branch's property.
* * * * * *
The 1982 project caused a series of changes, particularly, the swale was "filled in" some, and several 30" pipes were removed. Thus, above ground water, storage was removed, and water was directed to the newer underground system that was largely constructed with 42" pipes.
Consequently, water moved to the Branch property faster than it did prior to the 1982 project. The smaller pipes and the larger swale (of the older drainage system), slowed the water movement. Water is now moving faster, and there is less above ground storage capacity in the swale. The smaller pipes, of the older drainage system, caused ponding upstream of the Branch property. This upstream ponding allowed time for the water to drain out of the portion of the swale that was located on the Branch property. This drainage occurred prior to the development of excessive ponding that would have flooded into the Branch home.
* * * * * *
It is this Court's opinion that the 1982 project is flawed in that it did not include sufficient precautions to allow the water to drain rapidly from the rear of the Branch property into the older downstream drainage project.
The trial court specifically found that the 1982 Hebert drainage system was flawed in that it failed to provide for the faster flow of water which caused the excessive ponding on the Branch's property. La.Civ.Code art. 667 requires a lesser finding than La.Civ.Code art. 2317 in that there does not have to be any defect or negligence; rather all that is required to impose liability are causation and damages. Lombard, 284 So.2d 905.
Based on the foregoing, we find that the trial judge was not clearly wrong or manifestly erroneous in finding the City of Lafayette liable for the plaintiffs' damages. Under the circumstances, La.R.S. 9:2800(B) is inapplicable.
By its second assigned error the City argues that the trial court erred in failing to find that the plaintiffs' damages were caused by a force majeure or an act of God foreclosing any liability on the part of the City. The City cites Gabler v. Regent Development Corporation, 470 So.2d 149, 152 (La.App. 5 Cir.), writ denied, 476 So.2d 346 (La.1985), in support of its assertion that the weather conditions on October 27, 1991, constitute an act of God for which it bears no responsibility.
In Rector v. Hartford Acc. & Indem. Co. of Hartford, Conn., 120 So.2d 511, 515 (La.App. 1 Cir.1960), the court discussed the "act of God" defense as follows:
An Act of God is an unusual, extraordinary, sudden, and unexpected, manifestation of the forces of nature which man cannot resist. The fact that no human agency can resist an Act of God renders misfortune occasioned solely thereby a loss by inevitable accident which must be borne by the one upon whom it falls. On the other hand, when an Act of God combines or concurs with the negligence of the defendant to produce an injury, the defendant is liable if the injury would not have resulted but for his own negligent conduct of omission.

No one is liable for an injury proximately caused by an Act of God, which is an injury due directly and exclusively to natural causes, without human intervention, which could not have been prevented by the exercise of reasonable care and foresight.
An act which may be prevented by the exercise of ordinary care is not an act of God. (Notes omitted.) (Emphasis in original.)
Here, while the flooding was caused in part by natural forces, those forces do not alone bear responsibility for the damages plaintiffs allege. Moreover, the Gabler case cited by defendant involved a 100 year storm which flooded the entire New Orleans area. Our review of the record indicates that while there is conflicting testimony as to whether the storm in the instant case was a 10 or 25 year storm, there is no evidence to suggest this storm was as severe or as rare as the *221 one in Gabler. Finally, the record suggests that there was only minimal flooding in the streets of plaintiffs' subdivision (which were designed to handle two year floods) and no reports of flooding from the other residents of plaintiffs' subdivision.
Although the rainfall on the day in question was severe, the evidence indicates that the plaintiffs' damages were not occasioned solely by the heavy rainfall, but rather by the concurrence of the flaw in the Hebert project as discussed above and the heavy rainfall. Thus, we cannot say that the trial court was clearly wrong or manifestly erroneous in its conclusion that the flooding was not caused by an act of God, nor in its conclusion that the flooding would not have occurred but for the failure of the Hebert project. Saden v. Kirby, 94-0854 (La. 9/5/95); 660 So.2d 423. Therefore, this assignment of error lacks merit.
The City's third assigned error, answered by plaintiffs, maintains that the trial court erred in apportioning only 38% of the fault to plaintiffs.
Under Louisiana's comparative fault system, a plaintiff's recovery is reduced by the degree or percentage of fault attributed to her by the trier of fact. LSA-C.C. Art. 2323. In the apportionment of fault, the trier of fact must consider both the nature of the conduct of each party at fault and the extent of the causal connection between the conduct and damages. A party who relies upon a comparative fault defense bears the burden of proving by a preponderance of the evidence that such negligence was a cause in fact of the accident. Rossitto v. Jinks, 576 So.2d 1115 (La.App. 3rd Cir.1991).
Terro v. Casualty Reciprocal Exchange, 93-593 at p. 4 (La.App. 3 Cir. 2/2/94); 631 So.2d 651, 654, writ denied, 94-522 (La. 4/22/94); 637 So.2d 157.
Defendant asserts that the plaintiffs should not have converted the utility shed built by their predecessors into a formal office without first assessing the risks of flooding, particularly since none of the neighboring homes ventured beyond the adjoining natural ridge into the bottom and because one of the plaintiffs, Professor Branch, is an expert in subtropical architecture with both academic and educational experience in the field. The City further points out that the record clearly establishes that plaintiffs observed the water's rise for some two or three hours before inspecting for possible flood damage; during this period, the water not only had sufficient time to creep up the backyard but, according to plaintiffs, to rise some two feet within plaintiffs' study.
Clearly, the trial court did not err in finding that the damage is partly attributable to both parties; however, the more narrow question before this court is whether it erred in its assessment of fault.
In assessing the negligent conduct of the two parties, various factors may influence the degree of fault assigned to each:
"(1) Whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) How great a risk was created by the conduct, (3) The significance of what was sought by the conduct, (4) The capacities of the actor, whether superior or inferior, and (5) Any extenuating circumstances which might require the actor to proceed in haste, without proper thought." Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967, 974 (La.1985).
Faucheaux v. Terrebonne Consol. Government, 615 So.2d 289, 294 (La.1993).
In support of this assignment of error, the City argues that the Branches used the room in question in a manner inconsistent with its location and that they failed to take reasonable steps to prevent or mitigate their damages. We find merit in this argument. After applying the first four Watson factors,[2] the conclusion is inescapable: the trial court erred in not finding greater fault, at least sixty percent, on the part of plaintiffs.
Plaintiffs built their formal study on a ledge nine feet below street level and adjacent to a known floodway. Additionally, one cannot stand by silently and allow himself to be damaged when by his acts or words he *222 could prevent or lessen the damage. Ackel v. Coca Cola Bottling Co., 385 So.2d 30 (La. App. 4 Cir.1980). Had plaintiffs acted on their initial concern as to the water's rise, not with respect to controlling it but rather with respect to mitigating their damages, plaintiffs' flood damages, like their degree of fault, would be minimal at best.
By its fourth assigned error, the City argues that the plaintiffs failed to prove their entitlement to recover damages for architectural drawings damaged or destroyed by the flood. The trial court fixed at $80,000.00 the value of Professor Branch's architectural drawings destroyed by the rising flood waters. The plaintiffs contend that this figure is inadequate.
The question is whether the trial court abused its discretion in making its award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
As plaintiffs observe in brief, defendants presented no evidence whatsoever to contest Dr. Branch's assessment of the replacement cost of the drawings; consequently, from their perspective, it cannot be said that the trial court abused its much discretion in assessing damages. On the other hand, the City points out that the trial court erred in awarding plaintiffs the full replacement cost insofar as Dr. Branch, the only witness to testify on the subject, conceded that the affected drawings, although of some sentimental importance, in all likelihood would never again be used by him, as to do so would border on the unethical.
We conclude that the trial court abused its discretion in awarding plaintiffs the full $80,000 replacement value for the architectural drawings, which by Professor Branch's own admission are unlikely to be of much, if any, future use.
Thus, we must ask what is the highest award supported by the record? Theriot v. Allstate Ins. Co., 625 So.2d 1337 (La.1993); Coco, 341 So.2d 332. While the record clearly shows that the blueprints hold little promise of professional utility, we would be loathe to discount their sentimental importance to the USL professor of seventeen years. As plaintiffs are quick to point out, in addition to general damages, La.Civ.Code art. 667 enables the injured party to recover general damages for the loss of use of enjoyment of their property, mental anguish, irritation, anxiety, and discomfort. Arnold v. Town of Ball, 94-972 (La.App. 3 Cir. 2/1/95); 651 So.2d 313. We conclude that $35,000.00 is the highest award supported by the record for the mostly sentimental value of Professor Branch's drawings.
For the foregoing reasons, the judgment of the trial court is affirmed as amended.

DECREE
Based on the foregoing, we affirm the trial court's finding of liability on the part of the City of Lafayette, but amend the allocation of fault to make the City of Lafayette 40% responsible and the Branches 60% responsible, and subject to the foregoing apportionment of fault, reduce the component of damages allotted for Professor Branch's architectural drawings to $35,000.00. In all other respects, the judgment of the trial court is affirmed.
AFFIRMED AS AMENDED AND RENDERED.
NOTES
[1] Judge William N. Knight of the Thirty-first Judicial District participated in this decision as judge pro tempore by appointment of the Louisiana Supreme Court.
[2] The fifth Watson factor is inapplicable to the facts of this case.