745 So.2d 820 (1999)
Robert Barry HUNTER, et al., Plaintiffs-Appellees,
v.
TOWN OF SIBLEY, et al., Defendants-Appellants.
No. 32,075-CA.
Court of Appeal of Louisiana, Second Circuit.
October 29, 1999.
Writ Denied February 18, 2000.
*821 Lunn, Irion, Johnson, Salley & Carlisle by Ronald E. Raney, Shreveport, Counsel for Appellants.
Weems, Schimpf, Hayter, Gilsoul & Carmouche by Kenneth P. Haines, Robert H. Shemwell, Jr., Shreveport, Counsel for Appellees.
Before STEWART, CARAWAY and PEATROSS, JJ.
STEWART, J.
The defendants, the Town of Sibley (hereinafter "the town") and its insurer, International Indemnity Group of Atlanta, Georgia, appeal a judgment finding the town liable for damages incurred by the plaintiffs from the back up of sewage into their homes. We affirm the trial court's finding of liability.

FACTS
In 1994, the town installed a sewerage system to service its residents. The town required its residents to hook into the sewerage system. If residents failed to do so, then their water services would be terminated. The town provided installation procedures, charged a $35 permit and inspection fee, and inspected each connection upon completion. Robert Hunter and Martha Hunter (the "Hunters") and Elijah Deloach and Ginger Deloach (the "Deloachs"), all plaintiffs herein, were residents of the town and neighbors. Both the Hunters and Deloachs hired plumbers to connect their homes to the system in 1994 as required by the town.
The town installed a standard sanitary sewerage system, meaning that the system was not designed to accommodate the infiltration of outside water. The sewerage system consisted of a main gravity-operated line with connections to the individual service lines running from each residence. Additionally, clean-out plugs were located at each residence as a plumbing requirement to allow easy access to check or treat blockage. Sewage flows downstream from each residence to lift stations which pump *822 the sewage onward through force lines to a processing plant. Each lift station contains a reservoir or sump in which the sewage accumulates. The pumps are activated by the elevation of the sewage stored in the sumps or reservoirs.
A lift station located across the street from and slightly northwest of the plaintiffs' homes contains two pumps. When the sewage in the reservoir is at a low level, only one pump is activated to pump the sewage into a force line and onward to the processing plant. As the sewage level in the reservoir rises, the second pump is automatically activated as well. Both pumps are then pumping waste into the force line. If the sewage level rises even higher, a red light visible on the outside illuminates to indicate a dangerously high level of sewage.
On the morning of March 7, 1995, a heavy rainfall inundated the town. The massive volume of water filled the ditches and yards and almost entered the home of Sibley's then mayor, George Tharpe. The clean-out plug in Mr. Tharpe's yard was broken. Rainwater entered the sewerage system through the broken clean-out plug, mixed with the raw sewage, and exceeded the capacity of the lift station. As a result, the raw sewage backed into the main sewerage lines and into the plaintiffs' homes, which were nearest the lift station and lowest in elevation in the neighborhood, and escaped through the plumbing fixtures in the two houses. The overflow of raw sewage into the plaintiffs' homes continued for two hours. Approximately four to six inches of raw sewage collected in the plaintiffs' homes. Neither the Hunters nor the Deloaches have lived in their homes since this event.
The Hunters and the Deloaches filed suit for damages against the Town. The parties agreed to a bifurcated trial with the issue of liability to be determined first. The liability portion of the trial was held on April 1 and 2, 1998. The parties stipulated that the broken clean-out plug near the front of Mr. Tharpe's property was the source of rainwater entering the sewerage system. Finding in the plaintiffs' favor, the trial court applied La. C.C. art. 667 and determined that the 1996 amendments were substantive and subject to prospective application only. However, the trial court opined that even if the amended version of Article 667 applied, its decision would not differ. The basis of the trial court's decision was that the design of the sewerage system made the flooding of the plaintiffs' homes inevitable.

DISCUSSION
The town assigns four errors on appeal. In the first three assignments of error, the town contends that the trial court erred in its application of La. C.C. art. 667 and erred in ruling in the plaintiffs' favor on any basis, including the finding of purported inadequacies in the design of the sewerage system. In the fourth assignment of error, the town contends that the trial court erred in admitting evidence of negligence over its objections when no allegations of negligence were included in the petition. Because our determination of this matter does not hinge on a finding of negligence, we need not address the fourth assignment of error. In disposing of the remaining assignments of error, we must first determine which version of La. C.C. art. 667 applies.
The plaintiffs filed suit on August 15, 1995, at which time La. C.C. art. 667 provided:
Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.
As amended by the Legislature in Acts 1996, No.1, § 1, effective April 16, 1996, Article 667 now provides:
Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of *823 enjoying his own, or which may be the cause of any damage to him. However, if the work he makes on his estate deprives his neighbor of enjoyment or causes damage to him, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nonetheless, the proprietor is answerable for damages without regard to his knowledge or his exercise of reasonable care, if the damage is caused by an ultrahazardous activity. An ultrahazardous activity as used in this Article is strictly limited to pile driving or blasting with explosives.
Because the plaintiffs claims arose before the April 16, 1996 effective date of Act 1 of 1996, we must determine whether the significant changes made to Article 667 are to be applied retroactively.
As a general rule, in the absence of contrary legislative expression, substantive laws apply prospectively only, and procedural or interpretive laws apply both prospectively and retroactively. La. C.C. art. 6. The legislature did not express its intent concerning the retroactive or prospective application of Article 667, so we must determine whether the changes are substantive, procedural, or interpretive. Substantive laws either establish new rules, rights, and duties or change existing ones, while interpretive laws merely establish the meaning the statute had from the time of its enactment. Sudwischer v. Estate of Hoffpauir, 97-0785 (La.12/12/97), 705 So.2d 724; Keith v. U.S. Fidelity & Guar. Co., 96-2075 (La.5/9/97), 694 So.2d 180. Procedural laws prescribe a method for enforcing a substantive right and relate to the form of the proceeding or the operation of the laws. Sudwischer, supra; Keith, supra.
We have previously addressed in Jackson v. Beasley, 30,359 (La.App. 2nd Cir. 4/08/98), 712 So.2d 162, whether the portions of Act 1 of 1996 enacting La. C.C. art. 2317.1 and amending La. C.C. art. 2322 were to be applied retroactively or prospectively only. We concluded that Act 1 of 1996 made substantive changes in the strict liability laws and included no language requiring retroactive application; therefore, we held that the 1996 changes in strict liability would not be applied retroactively. The same conclusion follows here for the reasons set forth in Jackson, supra. We hold that the changes to Article 667 severely limit the scope of strict liability, are substantive in nature, and are not subject to retroactive application. We shall review the plaintiffs' claim for damages under Article 667 as it existed when their cause of action arose.
Article 667 imposes strict liability upon a municipality for any damage suffered as a result of overflow from a municipally owned and operated drainage or sewerage system into a home or business. Lombard v. Sewerage and Water Board of New Orleans, 284 So.2d 905 (La. 1973); Branch v. City of Lafayette, 95-298 (La.App. 3rd Cir. 10/4/95), 663 So.2d 216; Romero v. Town of Welsh, 370 So.2d 1286 (La.App. 3rd Cir.1979). Legal fault for purposes of liability under Article 667 is defined as the damage done to neighboring property. Butler v. Baber, 529 So.2d 374 (La.1988); King of Hearts, Inc. v. Wal-Mart Stores, Inc., 27,137 (La.App. 2nd Cir. 8/23/95), 660 So.2d 524. Proof of causation and damages are all that is required to impose liability under Article 667. Lombard, supra; Branch, supra; King of Hearts, Inc., supra.
We have previously referred to the Lombard decision which, citing Chaney v. Travelers Insurance Co., 259 La. 1, 249 So.2d 181 (1971), discussed the nature of liability under Article 667 as follows:
Article 667 is therefore a limitation the law imposes upon the rights of proprietors in the use of their property. It is a species of legal servitude in favor of *824 neighboring property, an expression of the principle of sic utere. An activity, then, which causes damage to a neighbor's property obliges the actor to repair the damage, even though his actions are prudent by usual standards. It is not the manner in which the activity is carried on which is significant; it is the fact that the activity causes damage to a neighbor which is relevant.
See Smith v. Town of Logansport, 395 So.2d 888 (La.App. 2nd Cir.1981), writ denied, 400 So.2d 1379 (La.1981). In Smith, the Town of Logansport was liable for damages under Article 667 when the main water line burst and damaged Smith's property. We found that the town's function in providing water was a work which caused damage to a neighboring property owner. The town's prudence in maintaining the line was not relevant to its liability under Article 667.
In an analogous case, Romero v. Town of Welsh, supra, Romero's home flooded when sewage overflowed from the commodes and drains. Romero's home was built sixteen inches below the level of the nearest manhole cover on the main sewage canal and was the next lowest point along the sewage system after the municipal disposal plant. There was testimony that an overload of sewage at the plant might cause a back up of sewage towards Romero's home. The previous homeowner had installed a relief valve which allowed overflowing sewage to bypass the home and enter a specially designed drainage canal. The valve was closed when Romero's home flooded. Although there was no showing of negligence by the town in its maintenance of the sewer system and no defect or flaw in the system, the appellate court found the town liable for damages caused by the back up of the sewage.
In the case sub judice, we find that liability likewise attaches under Article 667 to the town for damages caused by the overflow of sewage into the plaintiffs' homes.[1] The town is the proprietor whose work, namely the sewage system, caused damage to neighbors, the plaintiffs, by backing up into their homes and depriving them of the enjoyment of their homes. Even though outside water entered the system through a broken cleanout plug located on Mr. Tharpe's property, the fact remains the system was unable to handle the excess volume of fluids. As stated in testimony, the system was overwhelmed by the additional water. We cannot agree with the town's attribution of liability in this instance to the fault of some third party who may have broken the cleanout plug. The alleged third party fault is not such as to be considered the "sole cause of the damage, of the nature of an irresistible and unforeseeable occurrence" which would exonerate the town from liability for damage caused by its work, the sewerage system. Olsen v. Shell Oil Co., 365 So.2d 1285 (La.1978). We find no error in the trial court's judgment as it pertains to the liability of the Town of Sibley.

CONCLUSION
For the reasons discussed, we affirm the trial court's judgment at appellees' cost.
AFFIRMED.
PEATROSS, J., dissents with written reasons.
PEATROSS, J., dissenting.
I respectfully dissent. Plaintiffs' and the Town's experts both testified that there was no defect in the sewerage system. Mr. James Mohr, the civil engineer expert for Plaintiffs, testified that he found no defects in the sewerage system. On March 7, 1995, the Town was hit with a major storm that morning and the problem was not the capacity of the lift station but that water was not intended to infiltrate the sewerage system because it was designed *825 as a closed system. Mr. Mohr stated that you can not design a system to handle that volume of infiltration when such a calamity is involved.
Mr. Brad Graff, a civil and sanitary engineer and expert for the Town, testified similarly stating that there is no evidence to suggest the sewerage system was designed improperly or that it malfunctioned. State and Federal regulations limit the size and volume of the wet well or sump and the capacity of the pumps to prevent the sewerage from becoming septic while in the lift station. It is impossible, therefore, to build a system to handle the influx of water which occurred on March 8, 1995, and not violate State and/or Federal regulations, nor can a safety valve be built into the system. Both the State and the Federal regulations prohibit the diversion of raw sewage outside of the system, even in the case of an overload.
More compelling in this case is the obvious occurrence of third party fault.[2] The evidence presented clearly establishes that it is more probable than not that the Tharpes' clean-out plug was damaged through the fault of a third party, a defense to strict liability. Loescher v. Parr, 324 So.2d 441 (La.1975); Ross v. Lewis, 446 So.2d 1322 (La.App. 2d Cir.1984); Stovall v. Shell Oil Co., 577 So.2d 732 (La.App. 1st Cir.1991).
Both Mr. and Mrs. Tharpe testified they were not aware that the clean-out was broken. Mrs. Tharpe stated that she and Eddy Thomas, the Tharpes' yard man, were planting trees near the clean-out during the day before the storm and the clean-out was not broken at that time. Eddy Thomas testified that he mowed the grass the Saturday before the storm and planted trees with Mrs. Tharpe the day before the storm and the clean-out was not broken or damaged in any way on either of those occasions.
Mrs. Tharpe also testified that, while she and Eddy Thomas were planting trees, there was a young girl who rode by her home several times on an all-terrain vehicle. Mrs. Tharpe stated that she called the Town hall to complain about the girl because she was riding her vehicle through the Tharpes' yard near the place where the clean-out was located so as to avoid the speed bump in the road. Mr. Graff, who was asked to give his opinion as to the cause of the sewerage system back-up, noted in his report that the clean-out was broken off level with the ground, "apparently the result of vehicular damage."
Were it not for this third party fault, the backup of the sewage would not have occurred.
NOTES
[1] Because we find the town liable under La. C.C. art. 667, we reject the town's argument regarding the applicability of La. R.S. 9:2800 which applies to liability of public entities under La. C.C. art. 2317. See Branch v. City of Lafayette, supra.
[2] We note that the Town failed to plead the affirmative defense of fault of a third person in its answer to Plaintiffs' petition. In such a case, however, if a plaintiff nevertheless fails to object to the introduction of evidence that bears on the affirmative defense and that is not pertinent to any issues raised in the pleadings, the pleadings are considered to have been enlarged to include the affirmative defense, and the trial court can act as though the affirmative defense has been pled. DLJ of Louisiana No. 1 v. Green Thumb, Inc., 376 So.2d 121 (La.1979).