804 So.2d 659 (2001)
William Richard SPIKER, Jr. and Brenda Stich Spiker, Each Individually and as Members of the Community of Acquets and Gains Existing between Them, and William Richard Spiker, Jr. as Administrator of the Estates of the Minor Children, Sean Michael Spiker and Brandi Nicole Spiker, et al.
v.
CITY OF BATON ROUGE/PARISH OF EAST BATON ROUGE and the State of Louisiana, Through the Department of Transportation and Development.
No. 2000 CA 1841.
Court of Appeal of Louisiana, First Circuit.
November 9, 2001.
Rehearing Denied January 31, 2002.
*661 Robert H. Schmolke, Steven P. Lemoine, D. Adele Owen, Baton Rouge, for Plaintiffs/Appellees and 2nd Appellants, William Richard Spiker, Jr., et al.
J. Bradley Overton, Baton Rouge, for Defendant/1st Appellant, State of Louisiana Through DOTD.
Randall J. Cashio, Baton Rouge, for Defendant/Appellee, City of Baton Rouge/Parish of East Baton Rouge.
Before: CARTER, C.J., PARRO, and CLAIBORNE,[1] JJ.
CARTER, C.J.
The State of Louisiana, Department of Transportation and Development (DOTD), appeals a trial court judgment finding it liable for damages sustained by certain homeowners during two separate floods. The homeowners also appeal using the alternative argument that in the event this court determines DOTD is not 100% at fault, then liability should be assessed to the City of Baton Rouge Parish of East Baton Rouge (City-Parish).

FACTS
During the 1950s, Louisiana Highway 410 (Blackwater Road) was hard surfaced. A 36" concrete pipe (cross drain) was placed under Blackwater Road in conjunction with the surfacing project approximately one mile north of its intersection with Hooper Road, to drain storm water from the west side of the highway to the east side into Blackwater Bayou. In 1979, Monhegan Investment Corporation developed a tract of land on the west side of Blackwater Road in the vicinity of this cross drain. This development is known as Monhegan Subdivision.
In order to facilitate the development of the subdivision, the natural drainage of the *662 area was redirected to the south side of the subdivision and then routed through an underground drainage system on the west side of Blackwater Road. Because a portion of the underground drainage system was to be built within the state highway right of way, a permit allowing such a facility to be built in that location had to be obtained from DOTD. In February 1979, DOTD granted a permit to the City-Parish allowing the underground drainage system to be constructed within the highway right of way. The developer or its contractor actually designed and built the system.
The underground drainage system located within the state highway right of way is composed of a series of 42" concrete pipes. These 42" concrete pipes form one conduit that eventually connects to the southern wall of a concrete junction box. The junction box directs the drainage in a near 90 degree right angle turn into the 36" cross drain underneath Blackwater Road that is connected to the east wall of the junction box.
Following severe rainfalls on April 11, 1995, and December 18, 1995, several homes in Monhegan Subdivision flooded.[2] During both floods, debris clogged the junction box that directs drainage into the cross drain underneath Blackwater Road. The junction box was physically located within the state highway right of way. The clog was caused by a build-up of debris, including eight-foot landscape timbers that were too big to maneuver through the junction box. Every witness who testified regarding the cause of the flood agreed that had it not been for the build-up of debris, the homeowners would not have sustained any flooding to their houses.
Plaintiffs filed suit against DOTD and the City-Parish, alleging both negligence and strict liability theories. On joint motion of the parties, the case was bifurcated pursuant to LSA-C.C.P. art. 1562 and proceeded to trial on the issue of liability. Following a bench trial, the trial court rendered judgment in favor of the plaintiffs against DOTD. The claims against the City-Parish were dismissed.

DISCUSSION
Oral reasons for judgment reveal that the trial court used its apparent determination that DOTD had custody of the underground drainage system as a basis for accessing DOTD with liability.
The theories of liability asserted by the plaintiffs included strict liability based on LSA-C.C. arts. 667 and 2317,[3] and negligence under LSA-C.C. art. 2315. *663 LSA-C.C. art. 667 establishes an obligation of vicinage, a limitation on the use of property. At the time flooding occurred, LSA-C.C. art. 667 provided:
Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.
The term "proprietor" applies not only to a landowner, but also to a person whose rights derive from the owner. Inabnet v. Exxon Corp., 93-0681, p. 12 (La.9/6/94), 642 So.2d 1243, 1251. Under Article 667, once proprietorship is established, a plaintiff must only prove causation and damages. Lombard v. Sewerage and Water Board of New Orleans, 284 So.2d 905, 912 (La.1973). A violation of Article 667 is not a tort action in the sense that deliction in its usual connotation is a necessary element. A defendant under Article 667 must repair damage even though his actions are prudent by usual standards. It is not the manner in which the activity is carried on that is significant; it is the fact that the activity caused damage. Thus, Article 667 expresses the doctrine of strict liability, which does not depend on deliction, whereas, under LSA-C.C. art. 2315, "fault" must be proved. Under LSA-C.C. art. 667, there is recovery despite reasonableness and prudence if the work causes the damage. Butler v. Baber, 529 So.2d 374, 379 (La.1988).
Liability based on LSA-C.C. art. 667 has been found when damages are sustained as a result of overflow from a drainage or sewerage system. Hunter v. Town of Sibley, 32,075 (La.App. 2nd Cir.10/29/99), 745 So.2d 820, writ denied, 99-3351 (La.2/18/00), 754 So.2d 965; Branch v. City of Lafayette, 95-298 (La. App. 3rd Cir.10/4/95), 663 So.2d 216; Smith v. Town of Logansport, 395 So.2d 888 (La.App. 2nd Cir.), writ denied, 400 So.2d 1379 (La.1981); Romero v. Town of Welsh, 370 So.2d 1286 (La.App. 3rd Cir. 1979); Carr v. City of Baton Rouge, 314 So.2d 527 (La.App. 1st Cir.), writ denied, 318 So.2d 53 (La.1975). In each of these cases, the municipality that was assessed with liability owned, operated, and controlled the sewerage or drainage system that caused the damage.
LSA-C.C. art. 2317 addresses strict liability and provides:
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody....
One may recover under LSA-C.C. art. 2317 by showing the following: (1) that the thing which caused the damage was in the care or custody of the defendant, (2) that it had a vice or defect, that is, some condition which occasioned an unreasonable risk of injury, and (3) that the injury was caused by the defect. "Custody" for purposes of strict liability, does not depend upon ownership, but involves the right of supervision, direction, and control, as well as the right to benefit from the thing controlled. The mere physical presence of the thing on one's premises does not constitute custody. Haydel v. Hercules Transport, Inc., 94-0016, p. 9 (La.App. 1st Cir.4/7/95), 654 So.2d 408, 414, writ denied, 95-1171 (La.6/23/95), 656 So.2d 1018.
The owner, or person having custody, of immovable property has a duty to keep such property in a reasonably safe condition. He must discover any unreasonably dangerous condition on his premises and either correct the condition or warn potential victims of its existence. This duty is the same under the strict liability theory of LSA-C.C. art. 2317 as under the *664 negligent liability theory of LSA-C.C. art. 2315. The difference between these theories of liability is that under LSA-C.C. art. 2315, it must be shown that the owner, or person having custody, either knew or should have known of the risk; whereas under LSA-C.C. art. 2317, a claimant is relieved of proving the defendant's knowledge of the risk. Haydel, 654 So.2d at 415.
It is apparent under any theory asserted by the plaintiffs that the critical inquiry is determining who had proprietorship or custody of the underground drainage system located within the state highway right of way.
It is undisputed that the underground drainage system and the particular junction box that clogged during these floods are located within the state highway right of way. DOTD has the authority to issue permits for the use and occupancy on a state highway right of way for the installation, operation, and maintenance of underground pipes for drainage purposes. LSA-R.S. 48:381A.[4] Such authority is held by DOTD regardless of whether DOTD actually owns the land or maintains a servitude over the highway right of way. Accordingly, one granted a permit by DOTD can be considered a "proprietor" under LSA-C.C. art. 667 despite not owning the land. See Inabnet, 642 So.2d at 1251.
An important aspect of determining who had proprietorship of the underground drainage facility involves an examination of the driveway permit issued to the City-Parish allowing the underground drainage facility to be placed within the highway right of way and connected to the existing cross drain. A permit must be interpreted in accordance with the statutory grant of authority to the state agency issuing the permit. In the present case, a permit was issued by DOTD allowing the underground drainage facility to be placed within the highway right of way and tied into the existing cross drain. LSA-R.S. 48:381B mandates that permits shall only be issued to owners of the facility. The permit application seeking permission to put the underground drainage facility within the highway right of way identified the City-Parish as the applicant. However, the City-Parish maintains that it was never the owner of the underground drainage system. According to the testimony of Jerome Klier, the deputy director of the City-Parish Department of Public Works, there was an understanding between City-Parish and DOTD that such permits, although submitted in the name of the City-Parish, did not create any responsibility on the part of the City-Parish regarding the structure being placed within the highway right of way. According to Mr. Klier, the City-Parish merely acted as an agent for the developer.
Despite the plain language of the permit and the statutory scheme authorizing DOTD to only issue permits to the owner of the facility to be placed within highway right of ways, the trial court found the permit was only in effect for the construction of the underground drainage system. This was legal error.
The permit is silent as to any transfer of ownership of the underground drainage system upon completion of construction to DOTD. The applicable statute does not indicate that facilities placed within the state highway right of way pursuant to a permit become the property of the state or DOTD. Moreover, the statutory scheme contemplates continuing ownership of the facility by the owner who was allowed to place it there. According to LSA-R.S. *665 48:381C(1), the owner of the facility could be ordered to relocate the facility at his costs when such is necessary to permit the widening, relocation, or other improvement of the highway. Clearly, this provision of the statute is consistent with the idea that ownership of the facility within the highway right of way remains with the owner. Such language is also included in the permit itself, thus it was an error of law for the trial court to have concluded that the permit was no longer in effect.
In further support of the idea that ownership of the facility remains with the owner who constructed it, there is LSA-C.C. art. 493, which provides in pertinent part, "Buildings, other constructions permanently attached to the ground, ... made on the land of another with his consent belong to him who made them." Although a contractor hired by the developer constructed the underground drainage system, the City-Parish was deemed owner of the facility when it submitted a permit application to DOTD and identified itself as the applicant.
Under LSA-R.S. 48:381, it is mandated that only owners of the facility may be issued permits to place a construction within a state highway right of way. Despite the testimony in the record that DOTD understood the City-Parish was only the agent for the developer, the permit must be construed according to what the statute provides. We note there is no language in the permit application that disclosed that the City-Parish was merely the agent for the subdivision developer.
The trial court erred in not finding the permit was in effect and in apparently determining that DOTD had custody of the drainage facility located within its right of way. As stated in the jurisprudence, mere physical presence of a thing on one's premises does not constitute custody. Haydel, 654 So.2d at 414. Since there is no dispute that the clogged drainage system caused the homeowners' damages, we find that the determination that the City-Parish was deemed the owner, and therefore the proprietor of this underground drainage facility is sufficient to impose strict liability under LSA-C.C. art. 667. Accordingly, we need not determine whether the City-Parish is liable under LSA-C.C. arts. 2315 and 2317. Since we find that the City-Parish, and not DOTD, had proprietorship of the underground drainage facility, the judgment of the trial court in favor of the plaintiffs against DOTD must be reversed.[5]

CONCLUSION
For the foregoing reasons, we determine that the City of Baton Rouge/Parish of East Baton Rouge is liable under LSA-C.C. art. 667 for any damages suffered by the plaintiffs in this lawsuit. Accordingly, we reverse the trial court's judgment assessing liability to DOTD and render judgment in favor of the plaintiffs against the City of Baton Rouge/Parish of East Baton Rouge on the issue of liability. Costs of this appeal in the amount of $2,788.02 are assessed to the City of Baton Rouge/Parish of East Baton Rouge.
REVERSED AND RENDERED.
NOTES
[1] Hon. Ian W. Claiborne, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] On April 11, 1995, the homes of Karl D. Krester, Jr., Gerald W. Attales, Jed Gerbrecht, Michael W. Goudeau, John Kurt Bradford, Arthur Goulas, Brenda Spiker, Kerry Brumley, Patricia Herig, Robert Jay Temple, and Constance Simpson Viola flooded. On December 18, 1995, the homes of John Kurt Bradford, Arthur Goulas, and Robert Jay Temple flooded a second time. These parties and their families are the plaintiffs in this lawsuit.
[3] The legislature amended LSA-C.C. art. 667 and enacted LSA-C.C. art. 2317.1 in 1996 La. Acts, 1st Ex.Sess. No. 1, § 1, effective April 16, 1996. The plaintiffs' claims arose prior to the effective date of Act 1 of 1996. The changes made to Article 667 and the addition of Article 2317.1 limit the scope of strict liability, are substantive in nature, and are not subject to retroactive application. See Dennis v. The Finish Line, Inc., 99-1413, 99-1414 p. 5 n. 8 (La.App. 1st Cir.12/22/00), 781 So.2d 12, 20 n. 8, writ denied, XXXX-XXXX (La.3/16/01), 787 So.2d 319; Hunter v. Town of Sibley, 32,075, p. 4 (La.App. 2nd Cir.10/29/99), 745 So.2d 820, 823, writ denied, 99-3351 (La.2/18/00), 754 So.2d 965. Accordingly, the issue of liability will be reviewed under Articles 667 and 2317 as they existed when the plaintiffs' causes of action arose.
[4] All references to LSA-R.S. 48:381 are to that section as it existed in 1979.
[5] We also note that the permit at issue contained a "hold-harmless" clause whereby the City-Parish agreed to hold DOTD harmless for any injury or property damage sustained as a result of the exercise of this permit, which would also trigger the City-Parish's liability.